**Andy Jasper VIGIL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–61.

Supreme Court of Wyoming.

Oct. 11, 1996.

Cecil A. Cundy, Sundance, for Appellant.

William U. Hill, Wyoming Attorney General; Paul S. Rehurek; Mary B. Guthrie, Deputy Attorneys General; and D. Michael Pauling, Senior Assistant Attorney General, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

THOMAS, Justice.

The primary issue in this case, a claim of error in admitting evidence of prior bad acts as asserted by Andy Jasper Vigil (Vigil), induces us to revisit the criteria outlined in *Dean v. State*, 865 P.2d 601 (Wyo.1993), and to conform our process to that used in applying the FEDERAL RULES OF EVIDENCE. Additional claims of error are based upon asserted, impermissible comment on Vigil's exercise of his right to remain silent and upon prosecutorial misconduct in closing argument. After accommodating our rule to that of the federal courts, we hold there was no error in admitting the evidence of prior bad acts and, under our precedents, no error occurred with respect to comment upon the exercise of the right of silence or improper argument by the prosecutor. The Judgment and Sentence appealed from is affirmed.

Vigil sets forth three issues, with various sub-issues in his Brief of Appellant, as follows:

1. Whether or not the District Court erred in failing to exclude testimony of Max Alden, alleged accomplice and cocon-

* Chief Justice at time of expedited conference.

spirator, on direct examination as to an alleged delivery of cocaine by Appellant to Max Alden who was then thirteen or fourteen years old (four to five years prior to the offenses charged) which alleged prior bad acts were not the basis for any of the offenses charged?

2. Whether or not there was impermissible comment upon Appellant's exercise of his right to remain silent by the Attorney for the State of Wyoming in her rebuttal summation wherein [the prosecutor] argued in three instances as follows:

  a. "Bobby Burr, is he a vital link? Is he absolutely necessary? No. He isn't. Because everything Bobby would have been there for, so is Max. Max is here to testify. And if you notice, Ladies and Gentlemen, Max's testimony is completely uncontroverted. Not refuted in any way, shape or form.

  And Ladies and Gentlemen, I will tell you another secret."

  b. "Angelique Peterson's [Monet's] testimony, completely uncontroverted."

  c. "And I had your promise then and I would ask for your promise now if you find, based on the information that you have heard from the witness stand, completely uncontroverted, and if there is circumstantial evidence in there that you think that you can draw some inferences from, then you must do so, and you must convict him."

3. Whether or not there was improper conduct by the prosecutor in closing argument and rebuttal summation by conduct as follows:

  a. By impermissible introduction by the prosecution of new or additional facts not in the record when the State's Attorney stated in her rebuttal summation "And Ladies and Gentlemen, I will tell you another secret. The Defendant was given Bobby Burr's address. Defendant could have contacted Bobby Burr at any time."?

  b. By impermissible misstatements of the law by the Attorney for the State of Wyoming in her rebuttal summation wherein [the prosecutor] argued "And I will grant you Max Alden and Angelique

Peterson [Monet] are accomplices. No doubt. But you, Ladies and Gentlemen, can convict on the unsupported testimony of an alleged accomplice. And you can also convict on circumstantial evidence. And we talked about that during the voir dire. And I had your promise then and I would ask for your promise now if you find, based on the information that you have heard from the witness stand, completely uncontroverted, and if there is circumstantial evidence in there that you think that you can draw some inferences from, then you must do so, and you must convict him."?

  c. By impermissible comment on evidence which was excluded by the Court by the Attorney for the State of Wyoming in her rebuttal summation wherein [the prosecutor] stated "I don't have to have, and I don't have to prove beyond a reasonable doubt, that Max Alden and Bobby Burr stopped in Billings, Montana. That's why the evidence isn't before you because the Court was concerned after the fact. That's why you don't have it physically to take back with you."?

In its Brief of Appellee, the State condenses the issues to:

I. Whether the trial court abused its discretion by admitting testimony that Appellant had given cocaine to his stepson.

II. Whether the prosecutor improperly commented on Appellant's right of silence.

III. Whether the prosecutor made improper comments during closing argument.

In November 1992, Vigil, who at that time was a resident of Worland, became a target of an undercover drug investigation conducted by law enforcement officers in Wyoming and Montana. A confidential informant, Brian Metcalf (Metcalf), was a key figure in that investigation. On three occasions, Metcalf obtained cocaine from Max Alden (Alden), Vigil's eighteen-year-old stepson. Vigil furnished the cocaine to Alden.

In late October 1992, Vigil asked Alden to sell some cocaine for him. The first sale was made on November 2, 1992, when Alden and another individual, Bobby Burr (Burr), sold

Metcalf "two eight balls" of cocaine in Hardin, Montana. Later that same day, Metcalf contacted Alden and Burr, who then agreed to sell him one-fourth of an ounce of cocaine. Alden and Burr advised Metcalf they would have to go to Worland to pick up the cocaine. That same day, the two drove to Worland and picked up the cocaine at Vigil's paint and auto body repair shop. They returned to Hardin and sold the cocaine to Metcalf.

On November 4, Metcalf informed Alden and Burr he wanted to buy more cocaine. They drove to Worland and met Vigil in the parking lot of a store. Alden got into Vigil's vehicle, and they drove to the paint and auto body repair shop where Vigil gave Alden cocaine. At that time, Alden gave Vigil the money he had received in the November 2 sale. Alden and Burr then returned to Hardin, but they did not sell the cocaine to Metcalf.

Then, on November 12, Metcalf asked to buy an ounce of cocaine from Alden and Burr. Metcalf fronted that sale by giving them $1,900, which had been photocopied for identification by the drug investigation team. Alden telephoned Vigil to tell him they would be coming to Wyoming to obtain more cocaine. This time, Vigil changed the method of delivery. Alden was instructed to go to Lovell, not Worland, where he would meet a woman who would be driving a pickup equipped with a camper shell with two dogs in the pickup. The woman would have the cocaine, and they were to give her the money they had received from Metcalf. Accompanied by two other individuals, Alden and Burr went to Lovell. Their journey was monitored by law enforcement personnel.

After they arrived in Lovell, Alden went and sat in the pickup with the woman, later identified as Angelique Monet, who sometimes was referred to by her married name, Peterson. Monet gave Alden an ounce of cocaine and received the money from him. Earlier that day, Monet had stopped at Vigil's house, and he had given her the cocaine to deliver to Alden, agreeing to pay her $100 for that service. After turning over the cocaine to Alden and receiving the money, Monet returned to Worland and delivered that money to Vigil. Burr and Alden re-

turned to Hardin, where they were arrested after Burr sold Metcalf almost one ounce of cocaine.

Vigil was charged with three counts of unlawful delivery of a controlled substance and two counts of conspiracy to deliver a controlled substance. At a jury trial in Worland, Vigil was convicted of all three counts of unlawful delivery of a controlled substance and the two counts of conspiracy to deliver a controlled substance. He was sentenced to concurrent terms of thirty to sixty months and was fined $4,000 on each count. Additional material facts are set forth in connection with the discussion of the several claims of error.

■■■■ We hold we should follow the lead of the federal courts, and require an appropriate objection to be lodged, at trial or before, to evidence inadmissible under WYO. R. EVID. 404(b). We adopt as the criteria for the admissibility of evidence claimed, by a pertinent and timely objection, to violate WYO. R. EVID. 404(b) the same test as that articulated in the federal courts. Our trial courts and counsel in criminal cases will have a much broader base of pertinent authority from which they can evaluate the presence of a proper purpose, relevancy, and the possibility of unfair prejudice outweighing the probative value.

We are persuaded the rule requiring an appropriate objection, applied by the United States Court of Appeals for the Tenth Circuit in *United States v. Herndon,* 982 F.2d 1411, 1414–15 (10th Cir.1992), *aff'd on appeal after remand,* 34 F.3d 1077 (10th Cir.1994), is the correct response to this problem. Our decision is reinforced by a substantially parallel justification also appearing in *Schmunk v. State,* 714 P.2d 724, 739 (Wyo.1986), where we specifically were invited to place the burden of justifying admissibility of hearsay on the state and the court, and we said:

> Appellant suggests that the State must satisfy its burden and the court make a determination of admissibility even though appellee makes no objection to receipt of the hearsay evidence. Appellant is not correct in this contention. **To hold as suggested would impose an impossible**

burden upon a trial court to, on its own motion, require proof that opposing counsel has not demanded. Besides, opposing counsel may choose not to object to receipt of the offered evidence for many reasons. Trial strategy may dictate no objection; the opposing party may believe the offered evidence will be favorable; the opposing party may believe that impeachment may be more damaging and choose not to exclude the evidence. (Emphasis added.)

Only when there is a timely objection invoking the rule will there be a requirement that the State justify the evidence as proper under one of the exceptions to character evidence articulated in WYO. R. EVID. 404(b), or the general expansion of that rule (see *Gezzi v. State*, 780 P.2d 972 (Wyo.1989); *Brown v. State*, 736 P.2d 1110 (Wyo.1987); and *Hatheway v. State*, 623 P.2d 741 (Wyo. 1981)), and demonstrate that the evidence is relevant for the proposed purpose. The trial court then will be required to evaluate the admissibility of such evidence under WYO. R. EVID. 404(b), and to weigh the probative value of the evidence against the potential for unfair prejudice. That evaluation shall follow the criteria outlined by the Supreme Court of the United States in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). If requested, an appropriate limiting instruction will be given to the jury. In the absence of an appropriate objection, the accused may raise on appeal a claim of plain error in the admission of evidence of prior bad acts, but it will be incumbent upon the accused to offer case authority specifically foreclosing admission of the evidence under the circumstances of the case. The State then will be free to justify admission of the evidence on any theory of relevancy permitted by WYO. R. EVID. 404(b). If the objection is lodged and the evaluation under *Huddleston* is made, the State will be limited to the theory of admissibility advanced to and approved by the trial court.

In his first claim of error, Vigil contends the trial court erred in failing to exclude certain testimony of Alden with respect to prior bad acts. The specific testimony Vigil relies upon is:

Q. Did there ever come a time, Mr. Alden, that Mr. Vigil exposed you to cocaine?

A. Yes.

Q. How old were you at that time?

A. I'd say thirteen, fourteen, right around that time.

Q. Tell the jury about that.

A. I couldn't remember the day or anything but—

[DEFENSE COUNSEL]: Your Honor, I will object as to relevancy under Rule 403 on this line of questioning.

THE COURT: What's the relevancy here, Counsel?

[PROSECUTOR]: Your Honor, it goes to show that there is an ongoing relationship between the Defendant and Mr. Alden regarding the use of drugs, that it goes to show why Mr. Alden reacted the way he did when he was approached for this particular incident. It just sets a basis, your honor, so I believe it is relevant.

THE COURT: Overruled.

[PROSECUTOR]: Go ahead, Mr. Alden, tell this jury a little bit about what you recall the incident when Mr. Vigil first turned you, or exposed you to cocaine?

A. Like I said, I was about thirteen, fourteen, and I can't recall how it came about, he asked me to go down to the shop with him.

\*     \*     \*     \*     \*     \*

A. And he brought out a white powder and he told me to put my finger in it and rub it on my gums. And I did. And it immediately numbed my gums up. And he told me it was cocaine and not to tell my mother.

Alden went on to relate a different incident when Vigil gave him cocaine in a motel room in Hardin, Montana and told him, "[i]t would make me feel better." He testified they snorted cocaine, and Vigil then asked him if he could sell some cocaine for him, which he agreed to do.

The only objection presented to the trial court invoked WYO. R. EVID. 403. In his brief, Vigil asserts the quoted testimony also was foreclosed by WYO. R. EVID. 404(b). While Vigil did not cite *Dean* in his brief, the

State concedes that, if an objection had been lodged pursuant to WYO. R. EVID. 404(b), the trial court would have been placed on notice of its obligation to apply the *Dean* process. Our experience with the rule articulated in *Dean* now leads us to modify that rule so our application of WYO. R. EVID. 404(b) will be consistent with the application of FED. R. EVID. 404(b) in the federal courts. The tests are similar and compatible, and the adoption of the federal resolution will provide a much broader range of precedent for judges and lawyers in Wyoming.

In *Dean*, 865 P.2d at 606, we quoted a five-part test from *Garcia v. State*, 777 P.2d 1091, 1096 (Wyo.1989), as follows:

1. The extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes;

2. The remoteness in time of those crimes from the charged offense;

3. The extent to which the evidence of other crimes is introduced for a purpose sanctioned by W.R.E. 404(b);

4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue;

5. The extent to which the prosecution has a substantial need for the probative value of the evidence of the other crimes.

This test was initiated in *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), a case involving an effort to prove identity by similar signature crimes. We invoked federal precedent in *Bishop*, and review of the *Dean* test in that light leads to a conclusion that it is far more appropriate to a situation in which one is endeavoring to prove identity from signature crimes than it may be to other purposes set forth in WYO. R. EVID. 404(b):

*Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We adopt the four-part standard for determining admissibility of evidence pursuant to FED. R. EVID. 404(b), which has been adapted by the United States Courts of Appeals and other state courts from language found in *Huddleston.* The Supreme Court of the United States, in considering a claim that the trial court must make an initial determination that the prior bad act has been established by a preponderance of the evidence, said:

We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b). See *Michelson v. United States*, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948). We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed. Rule Evid. 404(b), 28 U.S.C.App., p. 691; S.Rep. No. 93–1277, at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the purpose for which it was admitted. See *United States v. Ingraham*, 832 F.2d 229, 235 (C.A.1 1987).

*Huddleston*, 485 U.S. at 691–92, 108 S.Ct. at 1502.

In *Herndon*, 982 F.2d at 1414, the United States Court of Appeals invoked *Huddleston* as the premise for articulating a test for admissibility of prior bad act evidence saying:

During its prosecution of the VIN alteration and removal counts, the government introduced evidence that Herndon possessed the items identified in the forfeiture count. Herndon did not object to the introduction of this similar act evidence at

trial. He now argues that the evidence showed only his propensity to engage in illegal conduct and, therefore, the district court erred by allowing its admission. We disagree.

> Federal Rule of Evidence 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court articulated a fourpart standard for determining the admissibility of Rule 404(b) evidence. **Such evidence is admissible if: 1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.** *Id.* at 691–92, 108 S.Ct. at 1502; *cf. United States v. Robinson*, 978 F.2d 1554 (10th Cir.1992). (Emphasis added.)

We adopt the four-part standard for the admission of Rule 404(b) evidence as articulated by the 10th Circuit Court of Appeals in *Herndon* and the body of federal case law that accompanies it. Other federal courts of appeals have embraced the *Huddleston* four-part standard. *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir.1990); *Gov't of Virgin Islands v. Harris*, 938 F.2d 401, 419 (3d Cir.1991); *United States v. Hernandez*, 975 F.2d 1035, 1038–39 (4th Cir.1992); *United States v. Haynes*, 881 F.2d 586, 590 (8th Cir.1989); *United States v. Miller*, 874 F.2d 1255, 1268 (9th Cir.1989), *on appeal after new trial*, 984 F.2d 1028 (9th Cir.1993), *cert. denied*, 510 U.S. 894, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993); *United States v. Howard*, 855 F.2d 832, 837 (11th Cir.1988); and *United States v. Miller*, 895 F.2d 1431, 1435 (D.C.Cir.1990), *cert. denied*, 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). State courts, as well, have adopted the *Huddleston* four-part standard in the application of their parallel state rules. *State v. Roscoe*, 184 Ariz. 484, 910 P.2d 635, 644 (1996); *People v. McMillan*, 213 Mich.App. 134, 539 N.W.2d 553, 555 (1995); *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181, 188 (1992); *State v. McKinney*, 110 N.C.App. 365, 430 S.E.2d 300, 304 (1993); *Blakely v. State*, 841 P.2d 1156, 1158 (Okla.Crim.App.1992); and *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516, 524 (1994). We join the United States Courts of Appeals and other state courts, which have adopted the four-part standard for determining admissibility of evidence pursuant to FED. R. EVID. 404(b), perceived to have been announced in *Huddleston*.

■ As the record discloses, Vigil's attorney did not pose an appropriate objection. We are satisfied that, like the late objection in *Gunderson v. State*, 925 P.2d 1300 (Wyo. 1996), this objection was neither timely nor pertinent to invoke a concern about a violation of WYO. R. EVID. 404(b). Because there was no objection, we can only consider the contention that the evidence was not admissible under WYO. R. EVID. 404(b) under our plain error doctrine. In *Schmunk*, 714 P.2d at 739, in addressing a claim of an inappropriate ruling on hearsay, we reaffirmed by quoting what we said in *Bradley v. State*, 635 P.2d 1161, 1163–64 (Wyo.1981), about plain error analysis:

> A failure to object constitutes a waiver of whatever error occurred, unless the error rises to the level of plain error. A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced. (Citation omitted.)

Use of the plain error analysis to resolve this case is reinforced by *Herndon,* where the court said:

We preface our review by noting that in order to preserve an alleged error for appeal, a party must object timely and properly. *United States v. Taylor,* 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). Herndon's failure to do so constitutes waiver of the issue unless there is plain error resulting in manifest injustice. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1008 (10th Cir.1992); Fed. R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Consequently, we need not review the district court's compliance with *Huddleston's* requirements with exacting scrutiny.

Initially, Herndon correctly notes that the government bears the burden of articulating the precise basis upon which Rule 404(b) evidence is offered, and that the trial court must identify the specific purpose for which such evidence is admitted. *See United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989); *United States v. Kendall,* 766 F.2d 1426, 1436–37 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). In *Record,* however, we were careful to add that "any error in failing to adhere to the *Kendall* requirements would be considered harmless if 'the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct.'" *Id.* at 1375 n. 7 (quoting *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988)); *see also* [United States v.] Robinson, 978 F.2d 1554 [ (10th Cir.1992) ], *supra.* In *Record* the defendant not only objected at trial, but had earlier filed an unsuccessful motion *in limine.* Here, Herndon did neither. **We now make explicit what** *Record* **impliedly recognized:** *Kendall's* **requirements apply only in the presence of a timely and proper objection at trial. To hold otherwise would place on the government and the trial court the additional**

**and awkward burden of having to defend the defendant.**

*Herndon,* 982 F.2d at 1414–15 (emphasis added).

■ Under our plain error analysis, we must focus, in this case, upon the question of whether a clear and unequivocal rule of law was violated. We hold there was no plain error to be found in admitting the evidence under WYO. R. EVID. 404(b), and we agree with the conclusion of the trial court that WYO. R. EVID. 403, invoking a test of balancing prejudice against relevancy, was not violated by the Alden testimony. The evidence was relevant for the purpose of demonstrating a "complete story," part of the history of the event, and as a "course of conduct." *Crozier v. State,* 723 P.2d 42 (Wyo.1986). The trial court did not err in admitting it.

In his second claim of error, Vigil points to specific comments made by the prosecuting attorney in rebuttal summation. The essence of Vigil's concern is that certain testimony was stated to be "uncontroverted" or "not refuted." In *Stanton v. State,* 692 P.2d 947, 949 (Wyo.1984), this court quoted *Oldham v. State,* 534 P.2d 107, 112 (Wyo.1975), which adopted language from *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955), to this effect:

It is concededly improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. [Citation.] It is not improper for the government to draw attention to the failure of lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify.

\* \* \* \* \* \*

Later, in *Cheatham v. State,* 719 P.2d 612, 620–21 (Wyo.1986), we said:

This is not a new issue for this court, and the parameters of our position with respect to the issue are becoming established. In *Oldham v. State,* Wyo., 534 P.2d 107 (1975), we adopted the test which the Tenth Circuit Court of Appeals articulated in *Knowles v. United States,* 224 F.2d

168, 169 (10th Cir.1955) for making the determination as to whether a prosecutor's statement constitutes an improper comment:

"[T]he test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. [Citation omitted.] It is not improper for the government to draw attention to the failure or lack of evidence on a point, if it is not intended to call attention to the failure of the defendant to testify."

The statement by the prosecutor in closing argument that "the sheer weight of the evidence is just too much [for the defendant] to explain," was not found to be improper in *Oldham v. State, supra.* We there concluded that the statement was not one which "the jury would naturally and necessarily take it to be, comment on the defendant's failure to take the stand." *Oldham v. State*, supra at 112, 113. A similar argument was made by the prosecution in *Deeter v. State*, Wyo., 500 P.2d 68, 71 (1972):

"There is not one single thing * * * that you have to weigh in your mind as to 'is he telling the truth,' * * * or 'which one is right,' * * *. There's none of that in this case because there are only two witnesses. The state of Wyoming called those two witnesses * * *."

Those statements were held to not constitute a comment upon the failure of the defendant to testify. More recently in *Stanton v. State*, Wyo., 692 P.2d 947 (1984), we ruled that a statement by the prosecutor to the effect that the defendant's only witness was not even there when these things occurred did not constitute an improper comment by the prosecutor upon the defendant's exercise of his right of silence.

■ We hold the accused comments in this case were not a violation of Vigil's right to remain silent. It is of some import that these comments responded to remarks made by Vigil's attorney in closing argument. Counsel are afforded latitude in the scope of closing argument. *Taul v. State*, 862 P.2d

649, 659 (Wyo.1993). The comments must be considered in the context in which they were made. *Vargas–Rocha v. State*, 891 P.2d 763, 768 (Wyo.1995). Our examination of the record persuades us that, like the comments in *Fortner v. State*, 843 P.2d 1139, 1147 (Wyo. 1992), these comments by the prosecuting attorney were simply comments on the state of the evidence and the failure of the defense to introduce material evidence or perhaps call logical witnesses. *See* J. Evans, Annotation, *Comment or Argument by Court or Counsel that Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify*, 14 A.L.R.3d 723, §§ 9, 10 (1967).

■ The last contention of error made by Vigil asserts improper conduct by the prosecutor in closing argument and rebuttal summation. The comments were not objected to at trial and, consequently, we must examine them to discern if plain error occurred. *De-Leon v. State*, 896 P.2d 764 (Wyo.1995); *Lobatos v. State*, 875 P.2d 716 (Wyo.1994); *Taul.*

■ The comments about which Vigil complains were made in rebuttal argument. The first involves the observation by the prosecuting attorney that Vigil had been given Burr's address and could have contacted him. This comment was a response to an attempt by Vigil's counsel to imply Burr really knew all of the answers about the drug transactions. For example, in argument, Vigil's attorney said:

Why don't we know what Bobby Burr knows. There is something that he could tell us that is important. * * * But we don't get to ask Mr. Burr how he knows Max, how long he knows Max or anything about that because the state doesn't bring him up here.

We never got a chance to find out about Mr. Burr, what he knows.

The response by the State in rebuttal was appropriate. *Smith v. State*, 880 P.2d 573, 574–75 (Wyo.1994). It is not improper for the prosecutor to comment on the failure of the defendant to produce the witness. *King v. State*, 780 P.2d 943, 953 (Wyo.1989).

■ Vigil complains the prosecutor injected a comment which was a misstatement of the law and the evidence. He points to

argument that Alden and Monet were accomplices, and the jury can convict on the unsupported testimony of an accomplice. These remarks were made in response to Vigil's efforts to cast doubt on the testimony of these two witnesses. The prosecutor's allusions were nothing more than a statement relying upon Instruction 17, which advised the jury it could convict Vigil upon the unsupported testimony of an alleged accomplice. That was an accurate statement of the law. *See Ostrowski v. State,* 665 P.2d 471, 487 (Wyo.1983). We see no improper statement by the prosecutor in these comments.

■ Lastly, Vigil complains about a statement by the prosecutor that the State did not have to prove beyond a reasonable doubt that Alden and Burr stopped in Billings. This was a response to Vigil's closing argument that something happened in Billings, and we don't know what. That was not a fact relevant to the charges against Vigil, and we are unable to identify any error based upon Vigil's argument, which presents no authority for the proposition asserted.

There was no error in the admission of Alden's testimony under either WYO. R. EVID. 403 or 404(b). Neither was there any impermissible comment upon Vigil's exercise of his right to remain silent nor other improper conduct by the prosecutor in closing argument and rebuttal. The Judgment and Sentence entered in the trial court is affirmed.