Rodney Alan GUNDERSON,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–191.

Supreme Court of Wyoming.

Oct. 11, 1996.

Rehearing Denied Oct. 29, 1996.

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Assistant Public Defender; Gerald M. Gallivan, Director of the Defender Aid Program; and Harry Ivey and Tony Monterastelli, Student Interns for the Defender Aid Program, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Lou Piccioni, Assistant Attorney General, for Appellee.

Before TAYLOR C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

MACY, Justice.

Appellant Rodney Gunderson appeals from the judgment and sentence which the trial court entered after a jury found that Appellant was guilty on three counts of aggravated assault and battery and that he was a habitual criminal.

We affirm.

## ISSUES

Appellant presents these issues for our review:

I. Whether the district court improperly allowed prior bad acts evidence with neither the State giving notice nor the district court articulating its reasons for admitting the evidence as required by [the] Wyoming ... Supreme Court in *Dean v. State.*

\* Chief Justice at time of oral argument.

II. Whether the trial court erred when it denied the defendant's motion to dismiss count II, aggravated assault and battery upon [the female victim], on the grounds that the State failed to establish a prima facie case on count II.

III. Whether under the Wyoming habitual criminal statute, the sentencing court can not use any felony convictions from foreign jurisdictions for sentence enhancement that do not meet the elements of a felony under Wyoming law.

## FACTS

On September 16, 1993, the victims, who were husband and wife, were driving their car on a rural road near Dubois. Appellant was driving a car in the opposite direction on the same road. Appellant drove his car directly toward the victims' car, causing the victims to drive to the side of the road where they stopped. Appellant pulled his car up next to the victims' car and pointed a gun at the victims through their open car window. He stated, "I'm going to blow your fucking head off." He cocked the gun and rested his finger on the trigger. The male victim, who was driving the car, leaned away from the gun and attempted to shield his wife. Even though she was not wearing any shoes, the female victim got out of the car and ran across a field toward her parents' home.

The male victim and Appellant exited their cars and argued. The quarrel apparently resulted from a dispute between Appellant and the victims over money. Appellant attempted to hit the male victim with a pop bottle. He then retrieved his gun from his car, and he again threatened the male victim with it. Appellant subsequently left the scene in his car.

Appellant was convicted after a bifurcated jury trial on three counts of aggravated assault and battery as described in WYO. STAT. § 6-2-502(a)(iii) (1988) and was found to be a habitual criminal under WYO. STAT. § 6-10-201(a) and (b)(ii) (1988). Appellant appealed to this Court.

## DISCUSSION

### A. Other Bad Acts

Appellant contends that the trial court committed reversible error by allowing other bad acts testimony to be admitted into evidence at his trial without following the procedure established in *Dean v. State,* 865 P.2d 601 (Wyo.1993). Appellant's argument focuses on the procedural question of whether the trial court erred by failing to conduct a hearing on the admissibility of the evidence. Unlike the appellant in *Vigil v. State,* 926 P.2d 351 (Wyo.1996),[1] Appellant does not present any cogent argument to establish that the trial court committed plain error by admitting the other bad acts evidence in violation of W.R.E. 404(b). We will, therefore, restrict our discussion in this case to whether the trial court erred by failing to conduct a hearing.

Appellant maintains that, in three separate instances, the trial court allowed other bad acts testimony to be admitted into evidence. In the first instance, the male victim testified that he had seen Appellant "packing" a gun on a previous occasion:

Q. What have you seen [Appellant] get angry about?

A. Well, the incident with Ryman. You know, Tom accused him of stealing all his things, and he said he didn't. And next thing I know, he's—[Appellant's] got a gun in his drawer and packing one around, and telling me he's going to take care of Tom if Tom comes there, you know.

Appellant did not object or request that a limiting instruction be given. In the second instance, Appellant's ex-wife testified:

Q. Have you ever seen [Appellant] act in a violent manner toward anyone or yourself?

A. Yeah.

Q. Has he ever hit you?

A. He did once. He slapped me.

. . . .

Q. —that was in a fight over money, isn't that true?

A. No.

Q. In that incident, you slapped him didn't you?

A. Yeah. I slapped him first.

Q. And then he hit you with his hand cupped on the ear, didn't he?

A. Yes.

Q. In fact, he ruptured your eardrum, didn't he?

A. Yeah.

Q. So his hand was cupped like this—

A. Yeah, I suppose it was.

Q. —when he hit you?

And when he hit your ear (demonstrating), it popped your eardrum, didn't it?

A. Yeah.

Appellant objected to the line of questioning, claiming that he had not been "charged with any offense here" and that the questions were improper. The trial court sustained the objection, but Appellant did not ask for a limiting instruction to be given.

In the third instance, which was also during Appellant's ex-wife's testimony, the following colloquy occurred:

Q. . . . Now, when the defendant left, he stole the Pontiac Grand Prix.

A. Correct.

Q. The 1987 Pontiac Grand Prix that's involved in this case.

A. Right.

Q. So he took it without any permission.

A. Correct.

Q. And he stole it when he found out that the police were coming.

A. Yes.

Q. And at that time, you had gone to your sister's house with your children.

A. Right.

Appellant asked for a side-bar hearing and objected to "any more questions about this." The State tendered the witness without asking any further questions, and Appellant did not request that a limiting instruction be given.

W.R.E. 404(b) governs the admission of other bad acts testimony:

---

**1.** *Vigil* is being published contemporaneously with this opinion.

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Vigil* revised the test established in *Dean* for judging the admissibility of other bad acts testimony under W.R.E. 404(b). *Vigil*, 926 P.2d at 354–58. We have changed our test so that Wyoming uses the same criteria as that used by the federal courts to determine the admissibility of evidence under FED. R.EVID. 404(b). 926 P.2d at 354–56.

■ Following federal precedent, this Court stated in *Vigil* that a defendant must object in order to trigger the State's obligation to establish the admissibility of the evidence. 926 P.2d at 355. "Only when there is a timely objection invoking the rule will there be a requirement that the State justify the evidence as proper." *Id.* When no proper objection is made, the trial court is not required to conduct a hearing on the admissibility of the evidence. *Id.*

We admonish defense counsel that they must specifically object to any potential W.R.E. 404(b) evidence so as to signal the need for a hearing on the admissibility of the evidence. We will not permit defendants to sit back and allow other bad acts evidence to be admitted in their trials and then insist on appeal that they are automatically entitled to have their convictions reversed because the evidence was admitted.

■ Having stated that defendants are obligated to properly object to other bad acts evidence before a hearing is mandated, we must decide whether Appellant's objections in this case were sufficient. Appellant's objections failed to specifically refer to W.R.E. 404(b), they were made after the witnesses had already answered the questions about Appellant's other bad acts, and they were quite general in nature. We conclude, therefore, that Appellant's objections were neither timely nor appropriate. In the absence of a proper objection, the trial court was not required to conduct a hearing to determine whether other bad acts testimony should be admitted into evidence.

**B. Sufficiency of the Evidence**

The State charged Appellant in count II of the information with committing an aggravated assault and battery upon the female victim. Appellant argues that the State did not present a prima facie case on that count and that the trial court, therefore, erred by denying his motion for a judgment of acquittal.

■ We recently restated our standard for reviewing a denial of a motion for a judgment of acquittal:

"[W]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict.

"'A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.' (citations omitted) *Leppek v. State*, 636 P.2d 1117, 1119 (Wyo.1981)."

*DeVries v. State*, 909 P.2d 977, 978 (Wyo. 1996) (quoting *Apodaca v. State*, 796 P.2d 806, 807 (Wyo.1990) (citation omitted)).

■ Section 6–2–502(a)(iii) provides in pertinent part:

(a) A person is guilty of aggravated assault and battery if he:

. . .

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; . . .

Appellant asserts that the State did not present any evidence to support a finding by the

jury that he threatened to use the gun against the female victim. This Court defined the phrase "threatens to use" in *Johnston v. State,* 747 P.2d 1132 (Wyo.1987). In that case, we held that proof of the mere presence of a weapon is insufficient to satisfy the "threatens to use" element of the crime of aggravated assault and battery. 747 P.2d at 1134. Instead, "the phrase 'threatens to use' in § 6–2–502(a)(iii), W.S.1977 (Cum. Supp.1986), requires proof of an actual threat of physical injury during the act of employing a deadly weapon." *Id. See also Lowseth v. State,* 875 P.2d 725, 729 (Wyo.1994).

The female victim testified at the trial that Appellant had a gun in his hand and that he pointed it toward her and the male victim. She attested that Appellant stated: "I'm going to blow your fucking head off." She further testified that she considered Appellant's statement to be a personal threat toward her and that she believed her life was in danger. The fact that the victim got out of the car and ran across a field in her bare feet reinforces her statement that she believed she was actually being threatened.

We conclude that the jury reasonably inferred that Appellant's actions with the gun constituted an actual threat to physically injure the female victim. The State, therefore, presented a sufficient prima facie case. The trial court properly denied Appellant's motion for a judgment of acquittal and sent the issue to the jury for resolution.

### C. Habitual Criminal Conviction

In the second portion of the bifurcated trial, the jury was called upon to consider whether Appellant was a habitual criminal. The State presented evidence in that portion of the trial which showed that Appellant had been previously convicted in Wyoming, Nebraska, and South Dakota. Appellant argues that, although the Nebraska and South Dakota convictions were classified as felonies in those states, they would have been punished as misdemeanors in Wyoming. He contends, therefore, that the convictions should not have been used to enhance his punishment under the habitual criminal statute.

Section 6–10–201 defines the term "habitual criminal" and prescribes the punishment for a habitual criminal:

> (a) A person is a[ ] habitual criminal if:
>
> (i) He is convicted of a violent felony; and
>
> (ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.
>
> (b) A[ ] habitual criminal shall be punished by imprisonment for:
>
> (i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;
>
> (ii) Life, if he has three (3) or more previous convictions.

In order to determine whether the foreign convictions were properly used to enhance Appellant's punishment, we must interpret the language of § 6–10–201.

> We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an "'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.* 845 P.2d at 1042.

*State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994).

*Lancto v. City of Rawlins,* 892 P.2d 800, 802 (Wyo.1995). Courts determine as a matter of law whether a statute is clear or ambiguous. *State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994). When we determine that the statute is clear and unambiguous, we give effect to the plain language of the statute. *Id.*

The statutory language of § 6–10–201 is clear and unambiguous. Under the plain

wording of the statute, a person is a habitual offender if, when he is convicted of a violent felony, he has been convicted of a felony in Wyoming or elsewhere on two or more previous occasions. The fact that the previous convictions were felonies in the rendering states but may not have been felonies in Wyoming is immaterial. The convictions were still felony convictions.

If the legislature had wished to limit application of the statute to persons who were convicted of conduct which is punishable as a felony under Wyoming law, it could have easily put that language into the statute. The legislature chose, however, to leave that language out, and we will not, under the guise of statutory interpretation, read it into the statute. *See General Chemical Corporation v. Unemployment Insurance Commission, Division of Unemployment Insurance, Department of Employment,* 902 P.2d 716, 719 (Wyo.1995). The trial court, therefore, properly used Appellant's felony convictions from South Dakota and Nebraska to enhance Appellant's punishment.

### CONCLUSION

The trial court did not commit any reversible errors in the issues presented in this case. Appellant's convictions are

Affirmed.