Dennis Eugene RIGLER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–113.

Supreme Court of Wyoming.

June 18, 1997.

Michael N. Deegan, Gillette, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Dennis Rigler appeals from his convictions for three counts of second-degree sexual assault, six counts of taking indecent liberties with a minor, and one count of attempted second-degree sexual assault.

We affirm.

## ISSUES

Appellant requests that we review a number of issues on appeal:

#1: Whether or not trial counsel was constitutionally ineffective in his representation of appellant.

#2: Whether or not the trial court committed reversible error in not adhering to the *Dean* procedure for admission of 404(b) evidence; and whether or not the trial court committed plain error in failing to properly instruct the jury on the limited purpose of 404(b) evidence.

#3: Whether or not the trial court committed reversible error in allowing an expert witness to vouch for the credibility of witnesses; and whether or not the trial court committed plain error in failing to give a cautionary instruction to the jury.

#4: Whether or not the trial court committed plain error in failing to properly instruct on the presumption of innocence.

#5: Whether or not the trial court committed plain error in failing to properly instruct on attempt to commit second degree sexual assault.

## FACTS

While they were living in California, Appellant began to molest his older daughter, MDR, under the pretext of disciplining her for bad behavior. MDR was twelve or thirteen years old at that time. Appellant continued to molest MDR after they moved to Gillette. A jury convicted him of two counts of taking indecent liberties with a minor and two counts of second-degree sexual assault for the assaults against MDR which took place in Wyoming.

Appellant also began to molest his younger daughter, CTR, when she was thirteen years old. He was convicted of one count of attempted second-degree sexual assault and one count of taking indecent liberties with a minor for those acts.

Appellant similarly victimized two of his daughters' fifteen-year-old friends, LC and BJT. Appellant was convicted of one count of second-degree sexual assault and two counts of taking indecent liberties with a minor for his assaults against LC and of one count of taking indecent liberties with a minor for his assault against BJT.

Appellant appealed to this Court after the trial court pronounced the sentence against him. We subsequently remanded the case so that the trial court could hold an evidentiary hearing on Appellant's claim that his trial counsel had performed ineffectively. After the hearing was held, the trial court determined that Appellant had received effective assistance of counsel, and the case was returned to this Court for a final resolution.

## DISCUSSION

### A. Other Bad Acts

The trial court held a pretrial hearing to determine whether evidence of Appellant's other bad acts was admissible at his trial. The State argued that the other bad acts evidence was admissible to show a course of conduct, criminal design, common criminal plan, pattern of abuse, and motive and to overcome Appellant's claim that the victims fabricated their stories or had improper motives for alleging that the assaults had occurred. The trial court concluded that the other bad acts evidence which is at issue in this appeal was relevant and that the probative value of the evidence outweighed the danger of Appellant being unfairly prejudiced. Consequently, evidence of other bad acts which were committed by Appellant against BJT and MDR was admitted at the trial. Another girl, LA, was also allowed to testify that Appellant had assaulted her even though the State did not charge Appellant with any crimes for his actions against her.

Appellant contends that the trial court committed reversible error by admitting the other bad acts evidence because the trial court failed to follow the procedure set forth in *Dean v. State*, 865 P.2d 601 (Wyo.1993). He claims that the trial court (1) neglected to articulate its reasons for finding that the probative value of the evidence outweighed the prejudicial effect of such evidence; and (2) failed to specifically address, at the pretrial hearing, a certain part of BJT's testimony about Appellant's other bad acts. Appel-

lant also argues that LA's testimony was not relevant.

██ W.R.E. 404(b) governs the admissibility of other bad acts evidence:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under both the test set forth in *Dean*, 865 P.2d at 606, and the test recently established in *Vigil v. State*, 926 P.2d 351, 357 (Wyo. 1996), in order for the trial court to admit other bad acts evidence, it must determine that the evidence is relevant and that the probative value of the evidence outweighs the danger that the defendant will be unfairly prejudiced.

██ A trial court's decisions regarding admissibility of uncharged misconduct evidence are entitled to great deference on appeal. If a legitimate rationale can be shown for the admission of such evidence, we will not find abuse of discretion.

*Ross v. State*, 930 P.2d 965, 968 (Wyo.1996) (citation omitted).

██ Appellant claims that the trial court committed reversible error when it failed to specifically consider and discuss the factors on the record which are set forth in the second footnote of *Dean*.[1] This Court stated in *Dean* that, in balancing the probative value of the evidence against the prejudicial effect, the trial courts should consider the factors outlined in footnote two. 865 P.2d at 609–10 n. 2. We declared that the trial court "must then articulate its findings of relevancy and how it weighed probative value against the countervailing factors." 865 P.2d at 609. This Court did not, however, state that the trial courts are obligated to make a specific finding on each consideration.

In *Sorensen v. State*, 895 P.2d 454, 457 (Wyo.1995), we applied the *Dean* rationale and reversed the appellant's conviction because the trial court failed to make a determination on the record as to the probative value and the prejudicial effect of the other bad acts evidence which was admitted at the trial. This case does not, however, involve a situation where the trial court did not make findings on the probative value and the prejudicial effect of the other bad acts evidence. In fact, the trial court specifically found

---

1. In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:

> 1. How clear is it that the defendant committed the prior bad act?
> 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
> 3. Is other evidence available?
> 4. Is the evidence unnecessarily cumulative?
> 5. How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

> 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

> 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
> 3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
> 4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
> 5. The comparative relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
> 6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Dean*, 865 P.2d at 609–10 n. 2 (citations omitted).

that, although the evidence was obviously prejudicial to Appellant, it was not unfairly prejudicial and that the probative value of the evidence outweighed the danger of unfair prejudice. We conclude that this finding was sufficient and that the trial court did not commit a reversible error by failing to make express findings on each of the factors which were set forth in the second footnote of *Dean*.

■ Appellant also asserts that the trial court erred by failing to review some of the other bad acts testimony which was presented by BJT. Appellant complains that the trial court did not specifically rule on the admissibility of BJT's testimony that Appellant had felt her breasts under the pretext of checking for cancer. Appellant did not, however, object at the trial to that particular testimony. We stated in *Vigil*, 926 P.2d at 355, and *Gunderson v. State*, 925 P.2d 1300, 1303 (Wyo.1996), that, when a proper objection is not made to the other bad acts evidence, the State is not required to establish its admissibility and the trial court is not obligated to conduct a hearing on the matter. Appellant, therefore, waived his right to have the trial court make an express determination on the admissibility of that portion of BJT's testimony by failing to object.

■ Appellant further contends that LA's testimony concerning his uncharged assaults against her was irrelevant. LA testified that Appellant had sexually assaulted her six years earlier when she was ten years old. Exercising an abundance of caution, the trial court considered the admissibility of LA's testimony at the pretrial hearing and at another hearing which was held during the trial outside of the jury's presence. The trial court concluded that the evidence was admissible under W.R.E. 404(b).

Appellant maintains that the uncharged acts against LA were too remote in time from the charged acts to be considered relevant. He also argues that the State did not have a substantial need to introduce the evidence and that the State did not present the

evidence for a proper purpose under W.R.E. 404(b).

The trial court acknowledged that Appellant's acts against LA were somewhat remote in time from the charged acts; however, it determined that the admission of LA's testimony was justified because of the similarity in the victims' ages and the stated purposes of the testimony. The trial court concluded that the evidence was admissible to show *modus operandi*, preparation, plan, and intent. The evidence was also important to the issue of whether the other witnesses were credible, especially in light of Appellant's contention that the other victims fabricated their claims. Considering the record and the fact-specific nature of this case, we conclude that the trial court's reasoning was not faulty under either *Dean* or *Vigil*. The trial court did not, therefore, abuse its discretion in admitting LA's testimony.[2]

■ Appellant contends that the trial court committed plain error by failing to give an oral or written instruction which would have limited the purpose for which the jury could consider the other bad acts testimony given by MDR and BJT. He claims that he properly requested that an instruction be given and that the trial court was, therefore, responsible for formulating and giving an appropriate instruction to address all the other bad acts testimony.

■ A criminal defendant is entitled, upon making a proper request, to have a jury instruction given which sets forth the limited purpose for which the evidence is being admitted. *See Vigil*, 926 P.2d at 357; *Dean*, 865 P.2d at 610. If, however, the defendant does not present an appropriate request, the trial court is not required to give the limiting instruction. *See Vargas–Rocha v. State*, 891 P.2d 763, 770 (Wyo.1995); *see also Vigil*, 926 P.2d at 357. Counsel may decide not to request that a limiting instruction be given in order to avoid drawing the jury's attention to the potentially damaging testimony. *Beintema v. State*, 936 P.2d 1221, 1228 (Wyo.1997).

---

2. Appellant also alludes to a possible error which resulted from the trial court's failure to conduct *in camera* hearings at the trial to determine the admissibility of all the other bad acts evidence.

He does not, however, offer a clear explanation of what the trial court's supposed legal error was. We will not, therefore, consider his contention.

After LA testified, the trial court gave an instruction which cautioned the jury about the limited purpose for which her testimony was being admitted. The trial court stated outside of the jury's presence:

I gave what I thought was a comprehensive limiting instruction to the jury. However, [Defense Counsel], if there's anything that you think I need to add by way of a limiting instruction, I'll be happy to do that now.

The defense counsel replied: "I believe you covered it, Your Honor." This limited exchange between the trial court and Appellant's counsel was not sufficient to be considered a request for a cautionary instruction to address all the other bad acts testimony which had been presented. The conversation concerned only LA's testimony, and the defense counsel agreed that the given instruction was adequate. The trial court did not, therefore, err by failing to give a comprehensive limiting instruction.

**B. Expert Testimony**

■ Appellant contends that the trial court erred by allowing an expert witness to vouch for the victims' credibility. The State argues that the expert's testimony was acceptable.

■ Expert testimony concerning sexual assaults is permissible under W.R.E. 702 to explain a victim's behavior. *Betzle v. State*, 847 P.2d 1010, 1023 (Wyo.1993). An expert may not, however, testify directly as to a victim's credibility or truthfulness. *Id.; Saldana v. State*, 846 P.2d 604, 617–18 (Wyo. 1993). This Court has stated that testimony which may help the jury in understanding another aspect of the case is admissible even though it incidentally supports another witness's credibility. *Curl v. State*, 898 P.2d 369, 374 (Wyo.1995); *see also Betzle*, 847 P.2d at 1024.

In this case, the expert testified in general about how he evaluated and diagnosed children who had reportedly been sexually abused. He stated that he began by taking histories of the children's lives and trying to ascertain their problem areas. The expert testified that he made his diagnoses in accordance with the guidelines set forth by the American Psychiatric Association. The State asked: "How important is the reliability of the children's statements to you in these kinds of cases in the diagnosis that you make?" Appellant objected to the question, claiming that it was improper because it infringed on a jury function. The trial court overruled the objection, and the expert stated that reliability was important. The State asked the expert: "[D]o you have practices and procedures that you follow or rules of thumb that you follow in determining reliability of the reports that you receive?" Before the expert could answer the question, the trial court cautioned the State to avoid questioning the expert about his opinions on the victims' reliability. When the State resumed questioning the expert, it did not seek an answer to its prior question.

The expert testified that he had applied the codes from the Diagnostic and Statistical Manual of the American Psychiatric Association in evaluating MDR and diagnosing her as being a victim of sexual abuse. He stated that, in forming his diagnosis, he took into account

her demeanor, her affect around discussing her—her story, her story of events, how she related that in terms of her emotion, the story itself in terms of spontaneity, consistency, her handling of some of the trauma and the story, how she attempted to cope, which in some ways is comparable to how victims of sexual abuse cope with that, her thinking patterns of how she perceives the world, how she interacts with interpersonal relationships.

Children in adolescence are very dependent on their care givers. They look to them for guidance in value systems and her—her view of herself in that relation. So I was looking for patterns to how victims are impacted by offenders. Those are the indicators that—that—that come to mind.

The expert discussed MDR's demeanor and how it related to typical responses which are given by childhood sexual abuse victims. The State asked: "You indicated the story itself was a factor that led to your diagnosis. Could you describe that more fully?" Appellant objected to the question, and the trial

court again cautioned the prosecutor. The expert did not answer the question.

The expert also testified about his evaluations and diagnoses of CTR, LC, and BJT. He discussed the diagnostic techniques that he had used in evaluating each girl. These techniques were essentially the same as those he had used to diagnose MDR. He concluded that each girl was a victim of sexual abuse.

In this case, the expert did not testify directly about the truthfulness or veracity of the victims' statements. The expert's testimony about the importance of the reliability of an alleged victim was general testimony regarding his diagnostic and evaluation techniques. We condoned this type of expert testimony in *Brown v. State,* 736 P.2d 1110, 1114–15 (Wyo.1987). The trial court carefully monitored the dialogue to be sure that the expert did not directly discuss the victims' reliability.

The fact that the reliability testimony was never related to the victims distinguishes this case from *Zabel v. State,* 765 P.2d 357 (Wyo. 1988). In *Zabel,* an expert testified about various means of determining whether an alleged victim was lying or fabricating her story. 765 P.2d at 359–60. The expert testified about how the fabrication factors related to the victims in that case. *Id.* This Court ruled that the admission of the expert's testimony in *Zabel* was plain error because the expert had testified directly about the victims' veracity. 765 P.2d at 361–63. In this case, by contrast, the expert was allowed to discuss the reliability factor in the abstract, but he did not step over the line into improper testimony by directly discussing the victims' veracity.

The expert testified that he had determined that the victims had been sexually abused. Such testimony is acceptable as long as an expert's determination was not made exclusively on the basis of a victim's version of the criminal act. *See Hayes v. State,* 935 P.2d 700, 704 (Wyo.1997); compare *Whiteplume v. State,* 841 P.2d 1332 (Wyo.1992) *with Hayes,* 935 P.2d 700. The expert based his diagnoses on a number of factors which related the victims' behavior to typical responses which are given by child-

hood sexual abuse victims. The testimony was, therefore, appropriate under W.R.E. 702, and the trial court did not err by admitting the expert's testimony.

Appellant also argues that the trial court committed plain error by failing to instruct the jury that the expert's testimony had been admitted for a limited purpose. Appellant did not, however, request that such an instruction be given. As we explained in the other bad acts section of this opinion, a party is not entitled to have a judge give a limiting instruction unless the party properly requests that one be given. *See Vargas–Rocha,* 891 P.2d at 770. The trial court did not, therefore, err by failing to give an instruction which limited the scope of the expert's testimony.

## C. Jury Instructions

Appellant maintains that the trial court committed plain error by erroneously instructing the jury in Instructions Nos. 3 and 10. The State argues that the instructions were proper.

The trial court must instruct the jury on the law which is applicable to the issues that were actually raised by the evidence presented at the trial. *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995). We give the trial courts wide latitude in instructing the jury, and we "will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Harris v. State,* 933 P.2d 1114, 1126 (Wyo. 1997). In determining whether the trial court has met its obligation to properly instruct the jury, we view the instructions in their entirety and read them together. *Baier,* 891 P.2d at 756. Appellant did not object to the instructions which the trial court gave; therefore, in order to prevail on appeal, he must show that the trial court committed plain error in instructing the jury. *See Spencer v. State,* 925 P.2d 994 (Wyo.1996).

Appellant claims that, in Instruction No. 3, the trial court improperly instructed the jury

that it could find the defendant guilty if it found that the presumption of innocence was "overcome" by the evidence rather than instructing the jury that the presumption of innocence must be overcome by "proof beyond a reasonable doubt" before the defendant could be found guilty.

He claims that the instruction erroneously informed the jury that it should apply the preponderance of the evidence standard rather than the reasonable doubt standard. Instruction No. 3 stated:

> The burden of proving a defendant guilty rests upon the State and it never shifts throughout the trial. A defendant is not required to prove his innocence.

> The fact that a defendant is charged with a crime may not be considered evidence of guilt. Nothing is taken by implication against a defendant, the law raises no presumption against him; rather, the presumption of law is in favor of his innocence.

> The presumption of innocence is not merely a matter of form which the jury may disregard; it is part of the law of the land and it is a right guaranteed to every person accused of [a] crime. The presumption of innocence continues with a defendant through all stages of a trial and until the case is decided by the jury. Only if the presumption has been overcome by the evidence may a defendant be found guilty.

This instruction did not inform the jury that it should apply the preponderance of the evidence standard. Instead, the trial judge focused on instructing the jury that the State had the burden of proof and that Appellant was presumed to be innocent. Instruction No. 4 addressed the reasonable doubt standard and stated in relevant part:

> With respect to each charge you must consider the elements instruction for that crime. The test you must use is this:

> If you find from your consideration of all the evidence that any of the elements of that crime has not been proved beyond a reasonable doubt, then you should find [Appellant] not guilty of that crime.

> If, on the other hand, you find from your consideration of all the evidence that each

of the elements of that crime has been proved beyond a reasonable doubt, then you should find [Appellant] guilty of that crime.

When we consider all the instructions together, we conclude that the jury was adequately informed about the quantum of evidence which would be necessary to convict Appellant. In the event that the jury was confused by Instruction No. 3, Instruction No. 4 made it clear that the reasonable doubt standard was the appropriate standard. *See Compton v. State,* 931 P.2d 936, 942 (Wyo. 1997). The trial court did not, therefore, err by giving Instruction No. 3.

Appellant also argues that, in Instruction No. 10, the trial court erred by improperly instructing the jury on the law of attempted second-degree sexual assault. Instruction No. 10 stated:

> The necessary elements of Count VI (attempted second degree sexual assault) are:

> 1. The acts occurred on or about January 20 to February 10, 1995.

> 2. The acts occurred in Campbell County, Wyoming.

> 3. [Appellant] intended to inflict sexual intrusion (sexual intercourse) on CTR and to cause her submission by means that would prevent resistance by a victim of ordinary resolution.

> 4. [Appellant] took a substantial step toward the commission of the crime.

> A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime.

> The intent with which an act was done is a condition of the mind that is seldom, if ever, capable of direct and positive proof. Because we have no power to directly observe the condition of a person's mind, the best we can do is infer it from the evidence produced during the trial. In deciding that issue you may consider the defendant's acts, the manner in which they were done, the means used, and all the circumstances surrounding the acts.

Appellant contends that the trial court should have instructed the jury in accordance

with the recently revised WYOMING PATTERN JURY INSTRUCTIONS—CRIMINAL. He maintains that, under the new pattern jury instructions, the elements of second-degree sexual assault should have been set out in a separate instruction from the elements of attempt. Appellant argues that, by combining the attempt elements and the second-degree sexual assault elements in the same instruction, the trial judge confused the jury with the concepts of intent and attempt.

 Instruction No. 10 included all the essential elements of the crime of attempted second-degree sexual assault. *See* WYO. STAT. §§ 6–1–301, 6–2–303 (1988). We do not require that specific language be used in instructing the jury as long as the instruction contains a correct statement of the law. *Compton*, 931 P.2d at 939–40; *see also Alberts v. State*, 642 P.2d 447, 452 (Wyo.1982). The trial court did not err by combining the attempt elements with the second-degree sexual assault elements because the instruction that was given clearly set out all the elements which the jury needed to find in order to convict Appellant. *See Compton*, 931 P.2d at 940. This Court stated in *Compton* that the " 'intent to commit the underlying offense is an essential element of criminal attempt.' " 931 P.2d at 940 (quoting *People v. Frysig*, 628 P.2d 1004, 1007 (Colo.1981) (footnote omitted)). We conclude, therefore, that Instruction No. 10 properly informed the jury of the mental element of the crime of attempted second-degree sexual assault and that the instruction was not confusing. Since the trial court did not err by giving Instructions Nos. 3 and 10, we do not need to apply the plain error doctrine in this case.

## D. Ineffective Assistance of Trial Counsel

Appellant contends that he was denied his constitutional right to have effective assistance of counsel at his trial. He claims that his counsel was deficient in sixteen different aspects, effectively denouncing his counsel's performance at every turn. The trial court held a protracted evidentiary hearing on Appellant's claim. At the conclusion of the hearing, the trial judge ruled that Appellant had received effective assistance from his trial attorney.

In order to prevail on his claim of ineffective assistance of counsel, Appellant must make the dual showings that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Bloomquist v. State*, 914 P.2d 812, 819 (Wyo. 1996). We have reviewed the relevant portions of the record and the voluminous transcript from the evidentiary hearing and conclude that, although in hindsight Appellant's attorney may have done some things differently, his performance did not fall to the level of being considered constitutionally defective. Further, the record shows that Appellant was convicted on the facts which were presented at the trial. Any errors which were committed by the trial counsel were minor and did not prejudice Appellant's defense or affect the outcome of the trial. We will not, therefore, go through the tedious and, in this case, unavailing task of addressing each of Appellant's contentions that his attorney's performance was inadequate.

## CONCLUSION

The trial court did not commit reversible error in this case, and Appellant received effective assistance from his trial counsel.

Affirmed.