Mark E. McGINN, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–154.

Supreme Court of Wyoming.

Nov. 21, 1996.

Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Appellate Counsel and Megan L. Hayes, Cheyenne, for Appellant Wyoming Public Defender Program.

William U. Hill, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Assistant Attorney General, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

THOMAS, Justice.

Mark E. McGinn (McGinn) asserts error in the admission into evidence in a criminal trial for second degree sexual assault [1] of hearsay through the testimony of an expert witness. A psychiatrist called by the State testified McGinn's sister had reported that, from the time she was seven or eight years old (some 26 years previously), McGinn sexually assaulted her and another sister. McGinn claims error in the failure of the trial court to conduct the hearing required by *Dean v. State*, 865 P.2d 601 (Wyo.1993), prior to receiving evidence of prior bad acts under WYO. R. EVID. 404(b).[2] The only objection posed at trial was a hearsay objection, bolstered by a claim of remoteness, and the State argued then, as it does now, that the admission of

---

* Chief Justice at time of oral argument.

1. WYO. STAT. § 6–2–303 (1988) defines sexual assault in the second degree, providing in pertinent part:

     (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

     \*     \*     \*     \*     \*     \*

     (v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim;

     (vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit; or

     \*     \*     \*     \*     \*     \*

2. We recently held that we no longer will follow *Dean v. State*, 865 P.2d 601 (Wyo.1993), in instances in which no proper objection is posed, and we will use a different analysis when a correct objection is made. *Vigil v. State*, 926 P.2d 351 (Wyo.1996).

the evidence is justified by Wyo. R. Evid. 703. We hold that the trial court ruled correctly in admitting the proffered evidence and providing a limiting instruction to the jury with respect to that evidence. McGinn's Judgment and Sentence is affirmed.

In his Brief of the Appellant, McGinn states this issue:

> Whether the trial court committed reversible error by admitting evidence of prior bad acts contrary to the standards established by this court in *Dean v. State,* 865 P.2d 601 (Wyo.1993), resulting in the evisceration of the requirements of WRE 404(b).

The State restates the issue in its Brief of Appellee as:

> Whether the trial court properly permitted the State's expert to testify regarding the basis of her opinion?

The record discloses that, within a few months after moving to Sheridan in February 1988, McGinn commenced sexual abuse of his stepdaughter. After a period of grooming, the sexual misconduct escalated to cunnilingus and vaginal intercourse with the victim as well as forced fellatio by the victim. McGinn's reprehensible course of conduct even included his insistence that his wife and stepdaughter engage in sex with one another. When the wife finally objected to this sexual misconduct, McGinn threatened suicide; threatened to kill the wife and her son if his demands were refused; threatened to kill the wife and the children if she reported the abuse; threatened the victim; and stated that, if his conduct were disclosed, he would blame it on post-traumatic stress disorder, and the Veteran's Administration (VA) would see to it that he would not be prosecuted criminally.

The victim's mother, McGinn's wife, attempted suicide in the fall of 1993, which was attributable to the fact that she could no longer endure his abuse. Early in May 1994, McGinn required the then sixteen-year-old victim to photograph him and his wife while they were engaging in sex, and he forced the victim to perform fellatio on him while his wife photographed that act. After this occasion, McGinn's wife called his mother and reported this course of sexual abuse. She was advised by McGinn's mother to report it to the authorities. The wife's fear prevented her from doing that, but McGinn's sister informed the authorities of the sexual abuse.

An investigation followed, and McGinn was arrested. McGinn was charged with two counts of second degree sexual assault in violation of Wyo. Stat. § 6–2–303(a)(v) and (vi) (1988). His initial plea was not guilty, but he later entered a plea of not guilty by reason of mental illness or deficiency.[3]

---

**3.** This defense is provided in Wyo. Stat. § 7–11–304 (1987), which states:

> (a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(b).
>
> (b) As used in this section, the terms "mental illness or deficiency" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.
>
> (c) Evidence that a person is not responsible for criminal conduct by reason of mental illness or deficiency is not admissible at the trial of the defendant unless a plea of "not guilty by reason of mental illness or deficiency" is made.

A plea of "not guilty by reason of mental illness or deficiency" may be pleaded orally or in writing by the defendant or his counsel at the time of his arraignment. The court, for good cause shown, may also allow that plea to be entered at a later time. Such a plea does not deprive the defendant of other defenses.

> (d) In all cases where a plea of "not guilty by reason of mental illness or deficiency" is made, the judge shall order the defendant examined as provided in W.S. 7–11–303(b). If an examination provided in W.S. 7–11–303(b) was made, the report may be received in evidence and no new examination shall be required unless, in the discretion of the court, another examination is necessary. Within five (5) days after receiving a copy of the report, both the accused and the state, upon written request, may obtain an order granting them an examination of the accused by a designated examiner of their own choosing. The clerk of court shall deliver copies of the report or reports to the district attorney and to the accused or his counsel. All reports required by this subsection shall conform to the requirements

McGinn's claim was that he had an extended history of treatment in psychiatric wards of VA hospitals and extensive use of prescription drugs. The district court then followed the procedure articulated in Wyo. Stat. § 7–11–303 (1987).[4] After receiving a report that McGinn could proceed, the case went to trial.

As the product of several motions in the proceedings, McGinn stipulated that he was the person in the photographs taken during the sexual acts with the victim, and the only issue at trial was whether McGinn's culpability was excused by reason of mental illness or deficiency. The only witness called by McGinn was a psychiatrist who had treated him as a patient in a VA hospital. The psychiatrist testified as to his diagnosis, which was that McGinn was suffering from dysthymic disorder (chronic depression), post-traumatic stress disorder, and a narcissistic personality disorder with antisocial features. He testified McGinn was not in contact with reality; had "an exaggerated sense of himself as a dangerous person, which amounts to something very near to a delusion"; and did not have "frank, gross and demonstrably delusions or hallucinations, so they—so the impression of his, quote, craziness is a little more subtle * * *." McGinn's psychiatrist's opinion was that none of the individual disorders grossly and demonstrably impaired McGinn's perception of reality

---

of W.S. 7–11–303(c). These reports are not public records or open to the public.

(e) If the initial report contains the recommendation that the accused be held in a designated facility pending trial, the court may order that the accused be committed to or held in a designated facility pending trial.

(f) Except as otherwise provided in this subsection, no statement made by the defendant in the course of any examination or treatment pursuant to this section and no information received by any person in the course thereof is admissible in evidence in any criminal proceeding on any issue other than that of the mental condition of the defendant. If the defendant testifies in his own behalf, any statement made by him in the course of any examination or treatment pursuant to this section may be admitted:

(i) For impeachment purposes; or

(ii) As evidence in a criminal prosecution for perjury.

4. Wyo. Stat. § 7–11–303 (1987) provides for examination of an accused to determine fitness to proceed and includes reports, commitment, defenses and objections in pertinent part:

(a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

(b) The court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination of the accused at the Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention. In selecting the examination site, the court may consider proximity to the court, availability of an examiner, and the necessity for security precautions. If the order provides for commitment of the accused to a designated facility, the commitment shall continue no longer than a thirty (30) day period for the study of the mental condition of the accused.

(c) Written reports of the pretrial examination shall be filed with the clerk of court. The report shall include:

(i) Detailed findings;

(ii) An opinion as to whether the accused has a mental illness or deficiency, and its probable duration;

(iii) An opinion as to whether the accused, as a result of mental illness or deficiency, lacks capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed;

(iv) An opinion as to whether at the time of the alleged criminal conduct the accused, as a result of mental illness or deficiency, lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law;

\* \* \* \* \* \*

(h) A finding by the court that the accused is mentally fit to proceed shall not prejudice the accused in a defense to the crime charged on the ground that at the time of the act he was afflicted with a mental illness or deficiency excluding responsibility. Nor shall the finding be introduced in evidence on that issue or otherwise brought to the notice of the jury. No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any person in the course of the examination or treatment shall be admitted in evidence in any criminal proceeding then or thereafter pending on any issue other than that of the mental condition of the accused.

(j) Notwithstanding any provision of this section, counsel for the accused may make any and all legal objections which are susceptible of a fair determination prior to trial without the personal participation of the accused.

but, nevertheless, McGinn lacked the capacity to appreciate the wrongfulness of his conduct.

McGinn's former stepdaughter and his former wife testified as to the charged events of sexual assault. The victim stated that at no time did it appear to her McGinn was fantasizing or delusional, and he would call her and her mother by their names. The victim's mother had also testified McGinn was not fantasizing and used their correct names. To rebut the testimony of McGinn's psychiatrist, the State called as a witness the psychiatrist who had examined McGinn at the Wyoming State Hospital. The State's psychiatrist testified her primary diagnosis was antisocial personality disorder with narcissistic personality traits. She was unable to affirmatively diagnose McGinn as suffering from a post-traumatic stress disorder on the basis of the information available to her. She stated her examinations did not reveal any acute or chronic mental illness or abnormal mental condition that would impair McGinn's perception or understanding of reality. In her opinion, he indeed could understand the wrongfulness of his conduct and the nature and consequences of his acts.

The State's expert also testified that, of the three diagnoses made by McGinn's psychiatrist, only the post-traumatic stress disorder had the potential of qualifying as a mental illness under Wyoming statutes. That would be so only if it were clearly demonstrated he was acutely unaware of what he was doing when he committed the crimes. In her opinion, McGinn understood his conduct was wrong, and he maintained substantial capacity to conform his conduct to the requirements of law and society.

The jury found McGinn guilty of both charges of sexual assault in the second degree. He was sentenced to serve not less than six years and not more than ten years on each of the counts, with the provision that the sentences run concurrently. In addition, McGinn was required to pay restitution for counseling for the victims and a surcharge of $50.00 for each count for the Victims Compensation Fund. McGinn appeals from the Judgment and Sentence.

McGinn's only concern is with the testimony of the psychiatrist called by the State. The psychiatrist testified regarding information given by McGinn's sister during an interview with a social worker. The critical aspect of that testimony is best captured by quoting from the record:

Q. Did you conduct interviews independent of the clinical interview of the defendant?

A. I conducted clinical interviews of the defendant. Oh, and then as I mentioned the social worker and psychologist also interviewed the defendant, and a social worker interviewed the defendant's sister, [McGinn's sister's name].

Q. Why is that done?

A. Well, again we make every effort to do a very comprehensive evaluation and not use the sole source of information from what the defendant or individual is reporting, because very often when an individual comes to be evaluated there has already been entered a not guilty by reason of insanity defense, and they don't report the full thrust, often times, and it helps to get other information from other sources.

Q. Did these interviews produce anything significant for your diagnosis or opinions?

A. I think the significant thing was information obtained from the sister, [McGinn's sister's name], in that evaluating for the presence of PTSD, which I believe has been discussed earlier here, it is important to determine that symptoms that might be attributed to the illness were not present before the traumatic stressor. Before the trauma. And [McGinn's sister] reported that—

[DEFENSE COUNSEL]: Objection, Your Honor. She is going to speak in terms of hearsay, but I also object to the remoteness of any event she might have obtained from family members, and in that line I would like to further voir dire the witness as to the time that is being referred to by this particular event.

[PROSECUTOR]: Your Honor, if I might respond first. **The statement that she is eliciting, in fact, is hearsay, however under Rule 703 the basis of which**

her decision is made, or a basis for her opinion, it is admissible.

Further, Your Honor, the objection regarding remoteness came up before the court pre-trial and the court has previously ruled that that information would, in fact, be admissible.

THE COURT: [Defense Counsel], do you want opportunity to lay more foundation with respect to the time that the statements were elicited? Is that correct?

[DEFENSE COUNSEL]: That's correct, Your Honor.

    \*    \*    \*    \*    \*    \*

[PROSECUTOR]: Your Honor, if it would be of assistance to counsel, the state would be willing to agree that it would be at least 1969 or before that [McGinn's sister] would have been seven years of age.

[DEFENSE COUNSEL]: Thank you, counsel. Certainly we would take that as a stipulation.

Do you concur, Doctor, that that would be a reasonable time frame, that it would be prior to 1969?

THE WITNESS: Yes, I concur.

THE COURT [sic]: Your Honor, I renew my objection as to remoteness.

[PROSECUTOR]: Your Honor, in response to the question, if I understood the Doctor—Well, let ME lay some additional foundation, if I could.

THE COURT: Go ahead.

Q. [PROSECUTOR]: [Psychiatrist for the State], the stressor in this case; would that have been the Viet Nam War?

A. It would have been events occurring during the Viet Nam War, yes.

Q. **So what you are attempting to do is to see what his behavior was like prior to that stressor event?**

A. That's correct.

[DEFENSE COUNSEL]: Objection, leading.

THE COURT: It is probably leading, but she already testified to that, I think. It was just a way of getting back on track. Go ahead.

[PROSECUTOR]: Your Honor, **with that additional foundation the state be-** lieves we have established what the purpose of that is for diagnostic purposes, to rule out that potential diagnosis, or rule it in, and it is a basis upon which part of her opinion in this case is made.

THE COURT: **The witness may testify as to the information upon which she based her opinion. Whether or not that information is reliable or credible would be up to counsel to try to establish by other means.**

Go ahead, but to that extent it is overruled, [Defense Counsel], your objection.

Q. [PROSECUTOR]: What was the significance to you about that information?

A. [PSYCHIATRIST FOR THE STATE]: **[McGinn's sister] reported that Mr. McGinn had, from the time she was approximately seven or eight, reportedly sexually assaulted she and her other sister.**

(Emphasis added.)

█ It is apparent from the course of this colloquy that McGinn objected only on the grounds of hearsay and remoteness. No effort was made at trial to attack this testimony as inadmissible under WYO. R. EVID. 404. Attacks upon the admissibility of evidence depend upon demonstrating an abuse of discretion by the trial court in its ruling. Evidentiary rulings are within the sound discretion of the trial court and are not to be overturned on appeal in the absence of demonstration of a clear abuse of discretion. *Vit v. State,* 909 P.2d 953 (Wyo.1996). In *Tennant v. State,* 786 P.2d 339 (Wyo.1990), we reaffirmed the concept established in *Hopkinson v. State,* 632 P.2d 79 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), that a ruling on the admissibility of evidence will not be reversed by this court so long as a legitimate basis exists for the ruling of the trial court.

It is only on appeal that McGinn raises the specter of a violation of WYO. R. EVID. 404(b). He contends that the testimony regarding prior bad acts had to be subjected to a hearing before it could be admitted pursuant to *Dean.* The essence of his complaints is that, in addition to being hearsay, this testimony was too remote and was inadmissible

under WYO. R. EVID. 404(b). The State argues a legitimate basis exists for the trial court's ruling pursuant to WYO. R. EVID. 703, and no error exists in the admissibility of this evidence. In addressing the testimony of expert witnesses in a series of rules, WYO. R. EVID. 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This rule was adopted from the FEDERAL RULES OF EVIDENCE, and problems relating to expert witness testimony in connection with prior bad acts are discussed in CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE §§ 357 and 358 (2d ed.1994). Those authors explain:

> Expert testimony is not supposed to be a conduit for proving inadmissible or easily misused facts, such as prior bad acts. Where underlying facts are subject to nonhearsay exclusionary doctrines, the conduit problem is not so much one of insuring that the expert conveys an opinion that is really his own, but one of accommodating the expert testimony rules with exclusionary policies. **It seems that an expert may properly base an opinion on other acts by a party, for instance, but that the calling party should not be able to prove the other acts merely because the expert used them as part of the basis of his testimony. And it should go without saying that litigants cannot properly use the expert testimony conventions to get an witness to prove facts and remote statements while adding no special insights of his own.**

FEDERAL EVIDENCE § 357, at 688 (footnotes omitted, emphasis added).

> **Testimony presenting psychiatric and psychological evaluations can rest on out-of-court statements** by the subject and by other examiners, as well as statements **by lay people who know the subject** (friends, family, nonprofessional caretakers). **The hearsay doctrine does not block such uses of statements by the subject,** and statements by other examiners would likely be admissible. **Again the point is that expert testimony may rest on them regardless whether they are proved or fit an exception, and even if the expert did not learn of them by firsthand observation, so long as his source was** *reasonable.* **Both the defense and the government regularly use such testimony when the issue is sanity (criminal responsibility) or competency to stand trial, and similar testimony is admissible in other contexts.**

FEDERAL EVIDENCE § 358, at 691 (footnotes omitted, emphasis added).

One way of permitting the expert to rely upon such information while maintaining the statements in perspective is to use a limiting instruction. In this regard, the trial court provided a limiting instruction to the jury at the end of the testimony of the State's psychiatrist:

> Counsel, just a minute. Ladies and Gentlemen of the Jury, sometimes we ask you all to be pretty sophisticated, and this is one of those times.
>
> At the beginning of [the psychiatrist for the State]'s testimony an objection was lodged when she was about to relate to you the contents of a telephone conversation that she presumably had with defendant's sister.
>
> **That information was related to you for a very limited purpose. The court allowed the Doctor to relate the content of the interview, just so you would know the types of things she relied upon when formulating an opinion on defendant's competency.**
>
> **You may not conclude that, in fact, the defendant molested his sister. And you may not consider the alleged content of the doctor/sister interview as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident against the defendant regarding the two crimes that he is charged with in this case.**

**Whether any of those proofs or [sic] present in this case is up to you all to determine from other witnesses. Go ahead.**

[PROSECUTOR]: Your Honor, I would like to thank you for limiting instruction.

(Emphasis added.)

■ We hold that the comment by McGinn's sister, related by the State's psychiatrist in the course of her testimony, was not offered in evidence to prove the truth of the matter asserted. The testimony was not offered as proof of bad character, and WYO. R. EVID. 404(b) has no application. The jury was so instructed. This evidence was relevant because the source was a reasonable one, and it was offered to demonstrate the basis upon which the psychiatrist relied in concluding McGinn's criminal conduct was not attributable to a post-traumatic stress disorder. The relationship is obvious. If sexual misconduct occurs prior to the event asserted as providing the traumatic stress, it can be inferred and concluded that the stressful event was not the source to which subsequent sexual misconduct can be attributed.

The State's psychiatrist also relied upon observation of McGinn's behavior, viewed twenty-four hours a day for about a month; a number of personal interviews; interviews by a psychologist and social worker; police records; four volumes of records from the VA hospital for the period from 1980 to 1993; and results of intelligence tests, neuropsychological screening battery, the Minnesota Multiphasic Personality Inventory, and Serres, which is a structured interview of reported symptoms. An expert is permitted to rely on all these sources of information pursuant to WYO. R. EVID. 703, including the comments of McGinn's sister, in order to form an opinion. The State made no effort through the psychiatrist to establish the truth of the allegations of McGinn's sister and also offered testimony adding special insights of the psychiatrist herself leading to her rejection of the diagnosis of post-traumatic stress disorder. Her testimony was her opinion, not that of others.

■ In his Brief of Appellant, McGinn contends, "[t]hat the evidence severely undercut Mr. McGinn's defense and damaged the credibility of his only witness is reflected in the jury's verdict, a verdict that might have been more favorable to Mr. McGinn in the absence of evidence of alleged prior bad acts." Obviously, McGinn complains of the result which demonstrates the jury opted to adopt the testimony of the State's psychiatrist rather than McGinn's psychiatrist. This argument not only is contrary to the view we must take of the evidence on appeal, but we are constrained to remind litigants:

It is then within the province of the trier of fact to give whatever credence they may to the expert testimony as well as all the evidence in reaching a verdict.

" * * * The trier of fact must decide what weight is to be given to expert testimony, and it still remains the duty of the trier of the factual issues, whether jury or judge, to determine the credibility of all witnesses, including expert witnesses, and to evaluate the testimony of each in reaching its verdict. [Citations.]" *Reed v. Hunter* [663 P.2d 513 (Wyo.1983) ], supra, at 518.

*Thomas v. Metz*, 714 P.2d 1205, 1208 (Wyo. 1986).

McGinn had an opportunity at trial to discredit the testimony of the State's psychiatrist, not only during *voir dire* of that witness, but in cross-examination and closing argument. He simply failed to persuade the jury that the opinion of the psychiatrist for the State was incorrect, but that does not translate into an opportunity to assert the trial should be set aside because of the failure to accommodate to *Dean*. This testimony was not used as a conduit for the purpose of establishing inadmissible character evidence. It was of a type reasonably relied upon by experts in the field in forming a diagnosis and in reaching an opinion or inferences upon the issues of mental illness or deficiency. This result is congruent with that reached in *Matter of GP*, 679 P.2d 976, 1004 (Wyo.1984), where an emergency room physician stated an opinion that the child was a "probable molested child" when the physical examination revealed vaginal and labial

inflammation, and the victim told him her father had hurt her, and we said:

Regardless of whether SP's out-of-court declaration to Dr. Klatt was properly admitted, Rule 703, W.R.E., authorizes receipt of an expert conclusion even when based on inadmissible hearsay, so long as other experts in the field would reasonably rely on similar evidence. *Madison v. Marlatt*, Wyo., 619 P.2d 708, 716 (1980).

(Footnotes omitted.)

The trial court in this instance accommodated the expert testimony rules with the appropriate exclusionary policies. Sound judgment was exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. A limiting instruction was given to the jury with respect to the psychiatric testimony. There was a reasonable basis for permitting the introduction of this testimony, and no abuse of discretion was demonstrated by the trial court. The testimony of the expert relating to the comment by McGinn's sister of sexual abuse was not character evidence, but instead, was information properly relied upon by the expert in forming her opinion pursuant to WYO. R. EVID. 703. No error was committed by the district court in admitting this testimony.

The Judgment and Sentence is affirmed.