Homer **GRISWOLD**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 99–45.

Supreme Court of Wyoming.

Dec. 30, 1999.

Representing Appellant: Thomas T. Zollinger, Gillette, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant Homer Griswold (Griswold) appeals his conviction for ten counts of second degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303 and two counts of indecent liberties in violation of Wyo. Stat. Ann. § 14-3-105. Griswold's main issues focus on the merger of his sentences with respect to the indecent liberties and second degree sexual assault charges and the admission of expert testimony he claims went to the ultimate issue of whether the children were victims and their credibility as witnesses.

After reviewing the ten issues Griswold raises, we affirm the judgment and sentence.

## ISSUES

Griswold presents ten issues on appeal:

1. Was defendant entitled to judgment of acquittal as to Counts VI and XII as a matter of law for allegations occurring after July 1, 1997. For any such allegation in Counts VI and XII prior to July 1, 1997, should defendant's sentences merge with those imposed for Counts I and VII[?]

2. Did the court abuse its discretion and commit error in its admission of the testimony of vague and remote "prior bad acts"[?]

3. Did the court err in permitting the state's expert to testify as to statements made to his associate by the children when such statements were made for purposes of litigation and not for purposes of medical diagnosis and treatment[?]

4. Did the court err in permitting Dr. Sirotnak to render an opinion that AO was a victim of sexual abuse[?]

5. Was there sufficient evidence upon which a verdict of guilt as to Count V could be returned or sustained[?]

6. Did the court err in permitting testimony that vouched for the credibility of the children, TM and AO[?]

7. Did the court err in allowing improper rebuttal testimony[?]

8. Did the court err in failing to grant defendant a continuance[?]

9. Did the State engage in willful unethical and oppressive misconduct to distract defendant's trial attorney from devoting needed attention to the defense of appellant and, by such misconduct, cause, in part, appellant to receive ineffective assistance of counsel[?]

10. Was defendant denied his rights under the Sixth Amendment of the U.S. Constitution and Article I, § 10 of the Wyoming Constitution, to the effective assistance of counsel[?]

As Appellee, the State phrases the issues:

I. Whether appellant's convictions as to Counts VI and XII should be vacated, or the sentences on those counts be merged with the sentences on Counts I and VII.

II. Did the district court abuse its discretion in admitting the challenged "prior bad acts" evidence?

III. Was the testimony of Dr. Sirotnak regarding Michelle Kelly's report properly admitted?

IV. Did the trial court properly admit Dr. Sirotnak's opinion testimony that AO was a victim of sexual abuse?

V. Was the evidence presented as to Count V sufficient to sustain appellant's conviction?

VI. Did the challenged testimony of Dr. Sirotnak and John Noteboom impermissibly vouch for the credibility of AO and TM?

VII. Did the district court abuse its discretion in allowing the challenged testimony of Dr. David Corwin during the State's rebuttal case?

VIII. Did the district court abuse its discretion in denying appellant a continuance?

IX. Should appellant's ninth and tenth appellate claims be summarily rejected by this Court?

## FACTS

On December 18, 1997, approximately two weeks after seven-year old AO returned home from a ten month stay as a foster child with Beth and Homer Griswold, AO's fifteen-year old brother picked her up from the babysitter. Later that evening when her brother told her to go to bed, AO refused and began crying uncontrollably. Eventually, AO disclosed that Griswold had forced her to perform fellatio on him while TM, her foster sibling, was in the room. The brother left his mother a note describing what AO told him. After briefly speaking with AO, the mother reported the matter to the Department of Family Services (DFS).

Investigating the report, DFS employees interviewed AO and TM individually. Using her own terminology, TM told DFS during the interview, and later testified at trial, that Griswold anally and vaginally penetrated both her and AO, forced both of them to perform fellatio on him, and performed cunnilingus on both of the girls. After the interviews, DFS referred the girls to a local pediatrician and a local mental health counselor for diagnosis and treatment. Both girls were examined by the pediatrician on December

26, 1997. Shortly thereafter, the multi-disciplinary Kempe Child Protection Team at Denver Children's Hospital also conducted psychological, anal, and genital exams.

Following the examinations, the Kempe Child Protection Team diagnosed the girls as victims of sexual abuse. Dr. Sirotnak, the director of the program, concluded the evidence indicated repeated, traumatic anal penetration of TM, and, to a lesser degree, of AO. This conclusion was further supported by the girls' accounts of what occurred during their stay with the Griswolds. Both AO and TM vividly described frequent instances of oral, digital, and penile intrusion and numerous occasions on which Griswold forced them to perform fellatio. They reported, with graphic details, that this abuse sometimes occurred when he was alone with one of them and sometimes when they were both present. TM resided with the Griswolds from March of 1996 to November of 1997, and AO resided with them from late January to early December of 1997.

On April 16, 1998, Griswold was charged with ten counts of second degree sexual assault, in violation of Wyo. Stat. Ann. §§ 6-2-303(a)(v), 6-2-306, and 6-10-102, and two counts of taking indecent liberties with a child, in violation of § 14-3-105. Counts I through V alleged sexual assault of AO by fellatio, penile intrusion of the anus, cunnilingus, digital intrusion of the vaginal area, and penile intrusion of the vaginal area. Count VI alleged indecent liberties with AO. The dates for these charges were January 31 through December 2, 1997. Counts VII through XII mirrored those allegations with respect to TM, and alleged dates of March 23, 1996, through November 21, 1997. Griswold was ultimately bound over on all charges, and a jury found him guilty on all twelve counts. The district court sentenced him to five concurrent terms of life imprisonment to run consecutively with another five concurrent terms of life imprisonment for the ten counts of sexual assault. In addition, he was sentenced to two nine to ten-year terms of imprisonment for the two indecent liberties counts to run consecutive with the other terms. Griswold appealed to this Court.

## DISCUSSION

*Argument One: Convictions Should be Vacated or Merged*

Griswold's main contention is that under the amended version of the indecent liberties statute, he was entitled to a judgment of acquittal for allegations of indecent liberties that occurred after July 1, 1997. As of July 1, 1997, the new language of Wyo. Stat. Ann. § 14-3-105, denoted by italics, provides:

(a) *Except under circumstances constituting sexual assault in the first, second or third degree as defined by W.S. § 6-2-302 through 6-2-304,* any person knowingly taking immodest, immoral, or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. * * *.

As we recently stated in *Flores v. Flores,* 979 P.2d 944 (Wyo.1999):

Statutory interpretation is a question of law, so our standard of review is de novo.... If the conclusion of law is in accordance with the law, we affirm it; if it is not, we correct it. We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia.

*Id.* at 946 (citations and quotations omitted).

Griswold maintains it was error to instruct the jury that it could find him guilty of a violation of § 14-3-105 for indecent liberties after July 1, 1997, because every time he exposed his genitals to the children, fellatio did, in fact, occur. He contends the fellatio constituted second degree sexual assault, making a charge of indecent liberties improper under the amended statute. He argues the State failed to differentiate between acts before and after the effective date of the amendment and, therefore, the district court erred when it did not grant a judgment of acquittal with respect to the indecent liber-

ties charges in Counts VI and XII. Griswold, however, overlooks that there were two victims in each instance of fellatio.

 The record reflects that on occasion, Griswold exposed himself to both children, but forced only one to perform fellatio, while the other child watched. It was therefore appropriate to charge Griswold with indecent liberties upon the child who was forced to watch, but suffered no sexual contact or intrusion and, thus, did not fall within the exclusionary language of § 14–3–105. Finding sufficient evidence to support the jury's conclusion that Griswold committed two separate crimes, the district court correctly denied Griswold's motion for a judgment of acquittal as to Counts VI and XII.

 Relying on *Owen v. State*, 902 P.2d 190 (Wyo.1995), Griswold argues that for sentencing purposes, the indecent liberties convictions merged into the second-degree sexual assault convictions. In *Owen*, penetration could not have been accomplished without removing the victim's panties; therefore, we held that the removal of the panties was necessary to the accomplishment of second-degree sexual assault, and merged the indecent liberties charges with the sexual assault charges. *Id.* at 194–95. For the purpose of punishment, where the commission of one offense logically requires the commission of those acts which are alleged to constitute the other offense, the two merge. *Id.* This case is distinguishable from *Owen.* In this case, we have two victims and evidence of numerous instances in which Griswold took indecent liberties with AO because she was forced to watch Griswold sexually assault TM. Similarly, the indecent liberties he took with TM by forcing her to watch were independent of the sexual assault of AO. Because the acts constituting indecent liberties were independent and not an integral part of the acts constituting sexual as-

sault, the charges do not merge for sentencing purposes.

*Argument Two: Prior Bad Acts Evidence*

Griswold maintains the district court abused its discretion when it admitted testimony from his prior foster children alleging sexual misconduct. "A trial court's decisions regarding ... evidence are entitled to great deference on appeal. If a legitimate rationale can be shown for the admission of such evidence, we will not find abuse of discretion." *Rigler v. State*, 941 P.2d 734, 737 (Wyo.1997).

In *Bishop v. State*, 687 P.2d 242, 245 (Wyo. 1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), we wrote:

> For evidence to be admissible at trial under Rule 404,[1] W.R.E., it must also be relevant under Rule 402,[2] W.R.E. Relevant evidence is defined in Rule 401, W.R.E., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Once it is determined that the evidence is relevant, it must then be determined if the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time as defined in Rule 403, W.R.E. If there is evidence of other crimes, wrongs, or acts, then it may only be admissible under Rule 404(b), W.R.E., and cannot be used to show the character of the accused or that the accused has a propensity to commit crimes such as those with which he is charged. Rule 404, W.R.E.

In *Vigil v. State*, 926 P.2d 351 (Wyo.1996), we adopted the four-part standard for the admissibility of Rule 404(b) evidence articulated in *Huddleston v. United States*, 485

---

1. W.R.E. 404(b) states:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. W.R.E. 402 states:

 All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible.

U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988):

> Such evidence is admissible if: (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Vigil*, 926 P.2d at 357 (citing *Huddleston*, 485 U.S. at 691–92, 108 S.Ct. at 1502).

Griswold's main contention is that the prior bad acts and allegations that were the subject of the challenged testimony were so remote that the probative value of the evidence was outweighed by its potential for unfair prejudice. In particular, he objects to testimony by two of his former foster children, BK and AN, sisters who lived with him in 1981 and 1982. He claims testimony by AN should have been excluded because she was unable to remember whether he had vaginal intercourse with her. He argues that testimony from BK was unreliable because she could not recall filing charges against Griswold's wife; having seen a counselor; having retracted accusations; or reporting his wrongs when she testified that an uncle molested her years later. His argument, in essence, is that the prosecution could not plainly, clearly, and convincingly prove these allegations because the victims had considerable difficulty in recalling the events surrounding the allegations they testified about, thus the evidence is unreliable and therefore inadmissible. *See Dean v. State*, 865 P.2d 601, 606 (Wyo.1993); *Britton v. State*, 845 P.2d 1374, 1375 (Wyo.1992) (citing *Bishop*, 687 P.2d at 246).

■ We note that our decision in *Vigil* effectively established new factors we must consider when determining the admissibility of 404(b) evidence, replacing the five factor test we previously relied upon in *Bishop*. *Vigil*, 926 P.2d at 357; *Bishop*, 687 P.2d at 246. As a result, the prosecutor no longer has to clearly prove the prior bad acts, and Griswold's argument is misplaced. Instead, we now consider whether the probative value of the evidence outweighs the potential for unfair prejudice.

■ Seeking to limit the admissibility of remote evidence in this case, Griswold invites this Court to set an arbitrary time limit at ten years for the admissibility of prior bad act evidence. The remoteness of the acts does not automatically make the testimony inadmissible; that is a discretionary decision for the trial judge. However, remoteness may affect the weight of the evidence rather than its admissibility. *Lonquest v. State*, 495 P.2d 575, 583 (Wyo.1972), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); *State v. Koch*, 64 Wyo. 175, 184–86, 189 P.2d 162, 164–65 (Wyo.1948)). Griswold fails to acknowledge our ruling in *Britton*, where we stated "[t]he test for remoteness cannot be a mechanical process based only on the amount of time that elapsed between the prior act and the present offense. . . . Questions concerning remoteness of evidence are left to the sound discretion of the trial court and are subject to challenge only for clear abuse of discretion." *Britton*, 845 P.2d at 1376 (citations omitted). We therefore refused "to impose an arbitrary year or month limitation of evidence admissible under W.R.E. 404(b)." *Id.* In fact, in *Britton* we recognized that evidence of conduct eight and thirteen years before the act charged may be admissible and not too remote. *Id.* Given our discussion in *Britton*, it is clear that we do not determine questions of remoteness solely by reference to the time the bad act occurred. We reject Griswold's invitation to impose an arbitrary time limit on the admissibility of evidence and, given our prior rulings in cases involving child sexual abuse, we find the district court did not act unreasonably in admitting the allegations of sexual assault and indecent liberties made by Griswold's former foster children.

### Argument Three: Hearsay Testimony of Dr. Sirotnak

Griswold challenges portions of the testimony of the State's expert witness, Dr. Sirotnak, the director of the Kempe Child Protection Team at Denver Children's Hospital. As noted above, questions related to the admissibility of evidence are within the sound

discretion of the trial court. *Punches v. State*, 944 P.2d 1131, 1136–37 (Wyo.1997) (citing *James v. State*, 888 P.2d 200, 204 (Wyo. 1994)). We give considerable deference to the trial court's rulings and will not disturb them absent a clear abuse of discretion. *Vit v. State*, 909 P.2d 953, 957 (Wyo.1996); *Herdt v. State*, 891 P.2d 793, 801 (Wyo.1995).

As part of diagnosing and developing a treatment plan for AO and TM, the Kempe Child Protection Team performed both physical and psychological examinations. The team psychologist, Dr. Michelle Kelly, interviewed and evaluated the children and prepared a written report of her findings. However, before the written report was complete, Dr. Kelly discussed its contents with Dr. Sirotnak and told him that AO and TM were victims of sexual assault.

Griswold objects to Dr. Sirotnak's testimony based on Dr. Kelly's verbal conclusion that AO and TM were victims of sexual abuse. Because Dr. Sirotnak did not participate in the interview process of either victim and was never in a position to observe their demeanor, Griswold argues his testimony should have been excluded as hearsay. Griswold further claims that Dr. Sirotnak's statements regarding TM were not based or dependent in any way upon physical evidence or physical observations, and therefore were inadmissible for purposes of medical diagnosis or treatment. W.R.E. 803(4).[3] Finally, Griswold contends that Dr. Sirotnak's testimony improperly attributed fault, causation or guilt to him. We disagree.

■ Dr. Sirotnak's testimony is admissible under W.R.E. 703, which states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We recognized in *Hayes v. State*, 935 P.2d 700 (Wyo.1997), that out-of-court statements by a third party ordinarily are inadmissible to prove the truth of the matter asserted, but may be admissible to show the basis of an expert's opinion. *Id.* at 703 (citing *McGinn v. State*, 928 P.2d 1157, 1162–63 (Wyo.1996)). In *Hayes* the evidence the treating physician learned from the victim's mother was not offered for the truth of the matter asserted, but was relevant because it established a basis for the doctor's expert opinion, and the doctor's testimony was her own opinion, not that of others. *Hayes*, 935 P.2d at 704; *McGinn*, 928 P.2d at 1163. *See also Stephens v. State*, 774 P.2d 60, 67 (Wyo.1989) (error to allow expert to opine as to who the perpetrator was or his guilt.) Out-of-court statements may be allowed for the limited purpose of showing the basis of an expert's opinion, so long as other experts in the field would rely on similar evidence. *Hayes*, 935 P.2d at 703. Dr. Sirotnak's testimony concerning Dr. Kelly's statements about TM and AO was not offered for the truth of the matter asserted, but was relevant because it established a basis for his expert opinion that AO and TM were victims of sexual abuse. Dr. Sirotnak testified that it was routine practice for members of the multi-disciplinary team to rely on each other's information. Based on the purpose and use of the testimony, the district court did not abuse its discretion when it admitted Dr. Sirotnak's testimony into evidence.

*Argument Four: Expert Testimony*

■ The fourth issue Griswold raises is that the district court erred in permitting Dr. Sirotnak to render an opinion that AO was a victim of sexual abuse. The basis for his argument is that Dr. Sirotnak's opinion testimony was tantamount to vouching for the child's credibility and therefore inadmissible. Griswold contends Dr. Sirotnak's opinion rested solely upon the substance of AO's statements and was no more than an unfounded belief in the child's veracity. While Griswold is correct that it is error to permit

---

**3.** *Statements for purposes of medical diagnosis or treatment.*—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]

a psychotherapist to vouch for the credibility of a victim, "we have permitted an expert witness to testify that the behavior of a victim was consistent with that generally displayed by victims of sexual assaults, even though such testimony does, in some way, validate the credibility of the victim." *Stephens,* 774 P.2d at 68.

Griswold's argument that Dr. Sirotnak's opinion was based on the children's statements and little else is not supported by the record. In addition to psychological observations and questions Dr. Kelly asked while interviewing the girls, Dr. Sirotnak did, in fact, have some physical basis, the abnormality in AO's anal exam, upon which he based his opinion. Dr. Sirotnak also testified that his opinion did not rest solely on the substance of AO's statements, but a number of other factors. He reflected on the language used to describe the reported events, the relative sophistication of AO's expressed knowledge of sexual matters, the extent to which her descriptions of sexual acts were graphically detailed, the consistency of her statements in those respects, and behavior indicating effects of abuse Dr. Kelly noted. *See also Rigler,* 941 P.2d at 740; *Punches,* 944 P.2d at 1136; *Hayes,* 935 P.2d at 703 (no error to introduce opinion testimony that individual was victim of sexual abuse.)

*Argument Five: Sufficiency of the Evidence*

■ Griswold argues there was insufficient evidence to sustain a conviction for Count V, vaginal intrusion of AO with his penis. We review sufficiency of the evidence claims by examining the record in the light most favorable to the State. We examine the evidence only to the extent that permits us to determine whether a panel of reasonable individuals could reach the result based upon the evidence before them, and we will not substitute our judgment for that of the jury. *Henderson v. State,* 976 P.2d 203, 208 (Wyo. 1999). Griswold failed to move for a judgment of acquittal on Count V at trial; therefore, we review his claim under the plain error standard. *See Farbotnik v. State,* 850 P.2d 594, 603–04 (Wyo.1993). Under plain error, Griswold must demonstrate: (1) the record must be clear as to the incident which

is alleged error; (2) a clear and unequivocal rule of law was violated; and (3) a substantial right has been denied him and as a result he has been materially prejudiced. *Warhawk v. State,* 849 P.2d 1326, 1327 (Wyo.1993) (quoting *Bradley v. State,* 635 P.2d 1161, 1164 (Wyo.1981)).

According to Griswold, *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215, 226 (1942), mandates reversal and a remand to the district court with instructions to enter a judgment of acquittal. "[T]he *Eagan* rule applies only if three conditions are fulfilled: 1) defendant is the sole witness, 2) defendant's testimony is accepted if not improbable or inconsistent with the facts and circumstances shown, and 3) defendant's credibility has not been impeached." *Glazier v. State,* 843 P.2d 1200, 1203 (Wyo.1992). We find *Eagan* inapplicable for two reasons: AO was not the defendant, and AO, TM and Griswold testified and therefore he was not the sole witness. Instead, we turn our attention to what actually occurred during the trial.

■ When first asked whether Griswold touched her vagina with his penis, AO said no. However, Griswold overlooks that moments later the prosecutor clarified that response, and AO testified that Griswold did, in fact, try to place his penis in her vagina. TM also testified that Griswold placed his penis in both her and AO's vaginas. Although AO answered "no" to one question about sexual intrusion of her vagina with his penis, there was sufficient testimony from AO and TM for a reasonable jury to conclude sexual intrusion occurred. Therefore, we find sufficient evidence to support the conviction.

*Argument Six: Credibility Testimony*

■ Griswold's sixth argument is that the district court erred in permitting testimony which he claims in essence vouched for the credibility of the victims. Absent a timely objection at trial, our review of an evidentiary issue is limited to a search for plain error. *Dudley v. State,* 951 P.2d 1176, 1179 (Wyo. 1998).

■ The majority of this argument concerns testimony from John Noteboom, the lead investigator for the Department of Fam-

ily Services (DFS). Noteboom's testimony focused on his experience and expertise and the protocol DFS followed in interviewing the children. Griswold maintains that the use of "alternative hypotheses" or "multiple hypotheses" and Noteboom's rejection of many of those hypotheses effectively vouched for the credibility of AO and TM. In *Rigler*, a case involving child sexual abuse, we stated "that testimony which may help the jury in understanding another aspect of the case is admissible even though it incidentally supports another witness's credibility." *Rigler*, 941 P.2d at 739. Griswold's expert witness, Dr. Marcus Einhorn, testified that it was crucial for an examiner to remain open to "alternative hypotheses" regarding why a child is telling a story and noted several reasons for such a story.

During rebuttal, Noteboom testified that from the outset he remained alert to four alternative possibilities for AO and TM's stories. First, he said the girls could have spent time together and conspired to tell the stories they had reported; second, they had been abused, but by someone other than Griswold; third, they had fabricated their stories due to mental and emotional problems; and fourth, their parents had forced them to make false reports. He indicated that he eliminated the third possibility after conferring with the girls' mental health counselor and eliminated the second possibility after learning that no other males besides Griswold had unsupervised access to the girls. Although he had not completely ruled out the first possibility, he did not find it particularly plausible given the consistency of their accounts for their age and the fact that AO and TM were not together after leaving the Griswold home. Nowhere in Noteboom's testimony did he conclude or even state that he found AO and TM credible or reliable. Noteboom's testimony was about his evaluation techniques and the precautions he took to protect against a tainted report resulting from interviews conducted by DFS personnel. Moreover, as in *Rigler*, Noteboom's testimony only incidentally supported the girls' credibility; therefore, the district court did not err in admitting Noteboom's testimony.

*Argument Seven: Rebuttal Testimony*

▮ Griswold's seventh argument is based on his claim that, at a minimum, the district court should have provided him the opportunity to present surrebuttal evidence to the State's expert, Dr. David Corwin. As with other evidentiary rulings, a trial court's decision to exclude evidence will not be upset absent a showing of a clear abuse of discretion. *English v. State*, 982 P.2d 139, 143 (Wyo.1999).

In *Cook v. State*, 929 P.2d 518 (Wyo.1996), we addressed the issue of surrebuttal testimony, stating

"While it is true ... that new facts brought out on rebuttal may properly be met by surrebuttal evidence, that rule does not permit surrebuttal merely to supply evidence which could have been given in chief or to cumulate additional evidence or to fortify evidence already given, or to supplement such evidence because it has been impeached upon rebuttal."

*Id.* at 520 (citing *Story v. State*, 721 P.2d 1020, 1040–41 (Wyo.), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405, (1986)) (quoting *Janski* [*v. State* ], 538 P.2d [271] at 279 [Wyo. 1975], and *State v. Alexander*, 78 Wyo. 324, 324 P.2d 831, 839 (1958), *cert. denied*, 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733 (1960)).

During his case-in-chief, Griswold questioned several witnesses about whether AO or TM reported any sexual abuse or showed signs indicating sexual abuse. Much of that testimony resulted in the witnesses concluding that nothing indicated on-going sexual abuse at the Griswolds. The final testimony regarding this issue came from Griswold's expert, Dr. Einhorn, who suggested that the children's accusations were products of DFS's improperly suggestive interviewing techniques and the children's susceptibility to those techniques. Given such testimony, the rebuttal testimony of the State's expert, Dr. David Corwin, was appropriate. The one question challenged in this portion of the trial was whether "it was unusual for a child not to disclose her sexual abuse until she is out of the home of the perpetrator?" Although during its case-in-chief the State explored the girls' failure to report Griswold's

abuse, the State did not need to explain the disparity between the girls' earlier silence while living with Griswold and their trial testimony that they were scared to tell anyone about the abuse because they thought they would get in trouble. We hold the trial court did not abuse its discretion.

*Argument Eight: Continuance*

Following the motions hearing and pre-trial conference, twenty-three days before his trial was set to commence, Griswold moved for a continuance so he could investigate the State's proposed prior bad act evidence. That motion was denied, and Griswold now claims error. The decision to grant or deny a motion for continuance is within the discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Cardenas v. State*, 811 P.2d 989, 994 (Wyo.1991). Absent a clear showing of manifest injustice, an abuse of discretion will not be found when a court refuses to grant a continuance requested solely on the basis of insufficient preparation time. *Tageant v. State*, 683 P.2d 667, 669 (Wyo.1984).

A review of the course of proceedings reveals that Griswold had sufficient time to prepare, investigate, and defend against the prior bad act evidence. On June 11, 1998, the district court set Griswold's trial for September 23, 1998. On July 15, Griswold filed a "Motion to Exclude Prior Bad Act Evidence" indicating that the W.R.E. 404(b) prior bad act evidence the State intended to introduce was greatly remote in time. On August 24, 1998, the State filed a memorandum supporting W.R.E. 404(b) evidence, indicating it planned to introduce testimony from Griswold's former foster children. *See Argument 2 infra.* During the pretrial conference on August 28, Griswold indicated he needed more time to prepare against the prior bad act evidence, and he was trying to contact expert witnesses to testify as to the tainting of those witnesses as well as AO and TM. The State objected, claiming that Griswold could have obtained an expert earlier. On August 31, Griswold moved for a continuance, claiming that he needed more time to prepare against the prior bad act evidence.

Within the motion to continue, Griswold, who had stated during the pretrial conference that he had not intended to seek an expert or a continuance, claimed he needed both. He also indicated in his motion to continue that he had obtained an expert witness to testify about the possibility that AO and TM's allegations were tainted. During the hearing on the motion to continue, Griswold failed to identify the witnesses he might call or specify the substance of their testimony. Moreover, he failed to assert that any witness could confirm or deny the official reports concerning the other allegations of abuse upon his former foster children. In fact, the State observed that Griswold apparently had long possessed information regarding these alleged bad acts but failed to investigate those matters further in the nearly full month between the pretrial hearing and trial date.

The district court did not err in denying a continuance, especially given that Griswold waited nearly forty-seven days after filing his motion to exclude the State's bad acts evidence before seeking to investigate. In addition, between the time Griswold sought to exclude the State's bad act evidence and the beginning of trial, he had seventy days to investigate and procure rebuttal witnesses, including thirty days from the date the State specifically identified that evidence. Moreover, testimony from his expert, Dr. Einhorn, provided an alternate attack on this evidence during the trial. Therefore, we do not find Griswold was materially prejudiced by the district court's decision.

*Argument IX and X: Prosecutorial Misconduct and Ineffective Assistance of Counsel*

We address Griswold's final arguments together. The crux of his final two claims is that the State engaged in misconduct designed to distract Griswold's trial counsel from his duties, which directly resulted in ineffective assistance of counsel. Relying on *Calene v. State*, 846 P.2d 679 (Wyo. 1993), Griswold argues only that "appellate counsel is filing a Motion for Partial Remand and Affidavit in Support Thereof for the purpose of having the matter remanded to the District Court for the taking of evidence

on this issue." We denied his Motion for Partial Remand, finding that Griswold failed to provide a substantial factual basis for his claim. Moreover, in his appellate brief, Griswold provides no facts or arguments in support of this assertion. We have consistently held that we will not consider claims unsupported by cogent argument or pertinent authority. *Madrid v. State*, 910 P.2d 1340, 1347 (Wyo.1996).

▮ Even if we were to analyze the ineffectiveness claims Griswold asserts, he is unable to satisfy his burden and demonstrate two things: that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Hornecker v. State*, 977 P.2d 1289, 1291 (Wyo.1999) (citing *Smith v. State*, 959 P.2d 1193, 1198 (Wyo.1998); *Martinez v. State*, 943 P.2d 1178, 1184 (Wyo.1997)). There is a strong presumption that counsel rendered adequate and reasonable assistance, making all decisions within the bounds of reasonable professional judgment. *Hornecker*, 977 P.2d at 1291 (citing *Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998); *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995)).

▮ The only evidence Griswold points us to is trial counsel's failure to obtain evidence relating to suggestions as to the character for truthfulness of the State's two witnesses regarding Griswold's prior bad acts in another state, hardly the type of information that would have resulted in his acquittal. There is no reasonable probability that, but for the failure to introduce this evidence, the result would have been different. Therefore, we do not find ineffective assistance of counsel.

## CONCLUSION

Griswold fails to demonstrate how the district court abused its discretion during his trial in admitting expert testimony and prior bad acts evidence. There was sufficient evidence to convict Griswold of both second degree sexual assault and indecent liberties. We affirm the judgment and sentence.